**Lois Wood THOMAS, Plaintiff-Appellant,**

v.

**Kenneth Lee JONES, Defendant-Respondent.**

**No. 51675.**

Supreme Court of Missouri,
Division No. 1.

Nov. 14, 1966.

Motion for Rehearing or to Transfer to Court
En Banc Denied Dec. 12, 1966.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Warren S. Stafford, Springfield, for plaintiff-appellant.

Glenn A. Burkart, Harold F. Glass, Mann, Walter, Burkhart, Weathers & Schroff, Springfield, for defendant-respondent.

WELBORN, Commissioner.

Action for $50,000 damages for personal injuries sustained in automobile collision. At trial on issue of damages only, jury returned verdict for plaintiff for $7,000.00. Plaintiff's motion for new trial was overruled and she has appealed.

Plaintiff Lois Wood Thomas was injured on September 29, 1962, when the automobile, in which she was a passenger, driven by her husband, collided with a vehicle operated by defendant. Plaintiff's husband died at the scene of the accident. Prior to the filing of the present action, plaintiff's action for the wrongful death of her husband had been tried in the Greene County Circuit Court, resulting in a verdict and judgment in favor of plaintiff for $15,000.00. This action was filed in Wright County and taken to Webster County on a change of venue. On the trial, defendant admitted liability and the question of damages was the only issue submitted.

On this appeal, plaintiff's first six assignments of error relate to allegedly erroneous rulings of the trial court on plaintiff's objections to argument of defendant's counsel, cross-examination of plaintiff, the admission of testimony on the trial of the wrongful death action as admissions against interest, and the exclusion of evidence offered by plaintiff. Plaintiff's seventh assignment of error is that the verdict is so inadequate as to reveal prejudice on its face. Defendant contends that any error in the first six assignments was cured by the substantial verdict in plaintiff's favor. Although defendant does answer the plaintiff's charges of error at the trial, he contends that the only essential issue presented on this appeal is whether or not the jury's verdict was so shockingly inadequate as to indicate that it was the product of passion and prejudice or gross abuse of the jury's discretion.

■ If plaintiff's contention of inadequacy of the verdict should be sustained, further allegations of error need not be considered. Grodsky v. Consolidated Bag

Co., 324 Mo. 1067, 26 S.W.2d 618, 623–625 [6, 7]; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 486 [4, 5]. We, therefore, consider this assignment first.

Plaintiff was fifty-five years old at the time of the collision. Defendant's counsel admitted at the trial that she sustained "great injuries" in the collision. Her undisputed injuries included contusion of the brain; serious cuts over the right eye, in the forehead, in the lip, through which a broken tooth protruded, and a deep cut in the right arm; contusions over her chest; a badly bruised right thigh; fractures of the second and third metacarpals of the left foot. She was treated at the scene of the collision by Doctor Sample and removed by ambulance to the hospital at Mansfield, where she remained under the care of Doctor Sample for four days. In addition to her external injuries, Doctor Sample found that the cut in her forehead had severed a nerve and that there was deviation and partial paralysis of the right eye, causing it to turn inward.

She was removed to the Lebanon Hospital for care by her family physician, Dr. Paul Jenkins. Doctor Jenkins concluded that she needed specialized neurosurgical and orthopedic care, and she was taken to Burge-Protestant Hospital in Springfield on October 5, 1962. There she was under the care of Dr. William Snead, an orthopedist, and Dr. Howard McAlhaney, a neurosurgeon. Doctor Snead placed pins in her toes and applied traction to the broken metatarsals and placed a cast on her foot and leg. Doctor McAlhaney treated the cerebral contusion. Plaintiff was discharged from the hospital on October 13, 1962. At that time she was wearing a walking cast which remained on until November 16. Doctor Snead testified at the trial that the fractures had healed with a strong union, with some slight displacement. He stated that, upon his most recent examination of plaintiff, she complained of pain in the foot after standing. He attributed the pain to the displacement. He provided plaintiff with a specially built-up shoe to wear. Doc-

tor Snead stated that the condition of her foot is permanent. He said that it would give her pain and discomfort after long standing or walking, but that she could stand on her feet for short periods of time and handle business.

Doctor McAlhaney's examination of March, 1964, revealed residuals of a cerebral contusion. Plaintiff complained of headaches, dizziness, poor memory and difficulty in organizing her thoughts. Examination in March, 1965 revealed the same complaint and findings. Doctor McAlhaney's opinion was that plaintiff was not at that time able to engage in gainful employment. He stated that only time would tell whether the condition was permanent.

Doctor Jenkins last saw plaintiff in September, 1964. His opinion, arrived at then, was that plaintiff "has permanent mental impairment, she has permanent physical impairment in that she staggers, and that she has poor balance, she thinks slowly, she reacts slowly." He stated that she would not be able to stand a regular job and that her condition would not improve.

At the time of the trial in April, 1965, plaintiff's cuts had healed, leaving scars and some disfigurement. She complained of headaches, dizziness and pain in her left foot. She said that she had difficulty walking because of a problem in retaining her balance. Her medical expenses amounted to approximately $1,650.00.

Defendant offered no medical testimony. His position was that, although plaintiff did sustain serious injuries, she had made a remarkable recovery. Defendant points to Doctor Snead's testimony that the fractures of her foot had healed with a strong union and that there was nothing in her foot that would keep her from moving around normally. He points to Doctor McAlhaney's testimony that plaintiff's vision problem had cleared before she left the hospital and that he found nothing abnormal on recent neurological examination.

Defendant points to plaintiff's testimony that Doctor Snead had prescribed no treat-

ment or exercise for her left foot since 1962; that, although she complained of forgetfulness, that condition was improving; that the protracted litigation in which she had engaged had adversely affected her physical condition "to some extent."

Plaintiff and her husband, who was seventy-two years of age at the time of his death, had operated a cleaning business in Lebanon for several years. Prior to 1957, the business was operated as a partnership, the plaintiff's brother as a partner of plaintiff's husband. In 1957, the partnership was changed to show plaintiff and her brother as the partners. According to plaintiff, the change was made because her husband's social security had been paid up. Thereafter, plaintiff was in a position to earn social security credit. According to plaintiff's brother, plaintiff worked regularly at the business, nine hours a day. Prior to the accident, she checked in orders at the counter, gave out orders, inspected and assembled orders "or anything that might come up. There was just something to be done all the time." She did most of the book work for the partnership. Plaintiff's brother stated that plaintiff and he managed the business, with incidental assistance from plaintiff's husband, who had not participated in the management since 1955 and did only delivery work.

Plaintiff did not return to work at the business after the accident. In January, 1963, she sold her interest in the business to a sister for $6,000.00.

Partnership information returns were introduced in evidence, showing, for the years 1957 to 1962, partnership net income of from some $12,500 to nearly $15,000, which according to the returns, was divided equally between plaintiff and her brother. Plaintiff received no income from the business after the sale of her interest.

Defendant showed that, in the wrongful death action, plaintiff testified that she had never tried to run the business without her husband and that she could not run it without him; that she relied upon him and could not have earned what the partnership did without her husband; that, if she had been in good health, she and her brother and his wife could not have continued to operate the business.

▪ Considering the evidence in the light most favorable to the verdict (Glore v. Bone, Mo.Sup., 324 S.W.2d 633, 635[3]; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 486[6, 7]), we are unable to conclude that the amount of the verdict is grossly and shockingly inadequate. Defendant's cross-examination of plaintiff's witnesses brought out matters which tended to minimize the permanent effect of plaintiff's injuries. The inconsistencies between plaintiff's testimony at this trial and at the wrongful death trial regarding her husband's contribution to the cleaning shop earnings could have the effect of heavily discounting plaintiff's claim for loss of earning capacity. We do not find such inadequacy in the verdict as would justify, for that reason alone, our overruling the trial court's denial of plaintiff's motion for a new trial. Glore v. Bone, supra; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469; Polizzi v. Nedrow, Mo.Sup., 247 S.W.2d 809; Spica v. McDonald, Mo. Sup., 334 S.W.2d 365.

Does this conclusion, as defendant contends, foreclose consideration of plaintiff's other assignments of error?

The rule which defendant invokes does preclude appellate relief, on the basis of trial error on the issue of liability, in favor of a plaintiff who has recovered a substantial verdict. McCormack v. McNamee, Mo. Sup., 274 S.W.2d 272, 279[9, 10]; Stone v. Farmington Aviation Corporation, 360 Mo. 1015, 232 S.W.2d 495; Cochran v. Wilson, 287 Mo. 210, 229 S.W. 1050, 1056[5]. Here, however, the only issue tried was that of damages, and all errors alleged by plaintiff relate, of necessity, to that issue. Plaintiff states, in reply to defendant, that the rule contended for by defendant is not applicable "when the alleged error, either in the admission or rejection of evidence,

\* \* \* relates to the measure of damages or has some demonstrable connection with the amount of the verdict." We do find numerous cases in which our appellate courts, on an appeal by a plaintiff who complains of the inadequacy of a verdict, have considered alleged trial errors relating to the issue of damages. Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 486; Davidson v. Schneider, Mo.Sup., 349 S.W.2d 908, 909; Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S.W.2d 915, 917; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469, 472; Polizzi v. Nedrow, Mo.Sup., 247 S.W.2d 809, 813; Glore v. Bone, Mo.Sup., 324 S.W.2d 633, 636; Spica v. McDonald, Mo.Sup., 334 S.W.2d 365, 369. In all of these cases, the reviewing court found against the plaintiff-appellant on his complaint based upon the inadequacy of the verdict and on his allegation of trial error. Therefore, no occasion arose for a ruling on the effect of trial error on the issue of damages in a case where the verdict was not found inadequate under the established standards of appellate consideration of the latter issue.

Defendant's primary reliance, in support of his position, is upon the 1965 decision of the Springfield Court of Appeals in Kirst v. Clarkson Construction Company, 395 S.W.2d 487. In that case, the contested issue was the amount to which plaintiff was entitled for damage to her house from defendant's dynamite blasting. Although the amount of damages sought does not appear, plaintiff's evidence appeared to show damage in the $6,000 range. The jury's verdict was in favor of plaintiff for $1,150.00. Plaintiff's motion for new trial attacked the verdict as inadequate and also specified trial errors. The trial court sustained the motion for three alleged trial errors, inferentially overruling assignments pertaining to inadequacy of the verdict. Plaintiff sought to sustain the order for new trial on the grounds of inadequacy of the verdict, which she claimed was the "inherent" result of errors for which the new trial was granted.

In considering the case, the Court of Appeals said that "it is crystal clear that plaintiff's appellate position necessarily must rest and depend upon her contention that the damages assessed by the jury were inadequate. Otherwise, it could not be said that trial errors, whatever they might have been, materially affected the merits of the action and constituted prejudicially reversible error. V.A.M.R. Rule 83.13(b); V.A.M.S. § 512.160(2)." 395 S.W.2d 491.

After reaching the conclusion that the verdict was not inadequate, the court stated: "In the case at bar, we lack (as heretofore pointed out) the essential predicate of a 'shockingly inadequate' verdict. And the general rule being \* \* \* that, where the jury has made a substantial award of damages, plaintiff will not be heard to complain upon appeal about the admission or exclusion of evidence \* \* \*, we well might pass without discussion grounds 1 and 2 specified in the order granting a new trial." 395 S.W.2d 495.

However, the court did review the alleged trial errors and concluded that no prejudicial error was shown.

Insofar as the court concluded that the matters specified by the trial court as the basis for granting a new trial did not constitute prejudicial error, the opinion is consistent with the injunction that a judgment is to be overturned only for "error \* \* \* committed by the trial court against the appellant, materially affecting the merits of the action." Civ.Rule 83.13(b), V.A.M.R. However, the case does not actually hold that an appealing plaintiff who has received a verdict for substantially less than the amount sued for cannot obtain a new trial for prejudicial error on the trial of the issue of damages.

In Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618, l. c. 624, the court stated:

"We are mindful of the fact that this court has generally held that in actions for damages judgment would not be set aside on the sole ground of inadequacy \* \* \*,

but this rule is subject to the well-recognized exception, above noted, that appellate courts will interfere when upon a consideration of the whole record the judgment is so shockingly inadequate that it can be explained only as the result of passion, partiality, or prejudice. If, on appeal, the verdict can be reasonably accounted for on the theory that the jury believed only enough of plaintiff's evidence to fix liability, the exception by its terms would not apply. Sometimes the condition of the record in a case admits of no such explanation, as where it appears that defendant expressly conceded the nature and extent of plaintiff's injuries, or where they were so obvious that their mere ocular presentation to the jury amounted to proof as a matter of law. Craton v. Huntzinger (Mo.Sup.) 187 S.W. 48, 52. *And when from its consideration of the size of a verdict, whether great or small, in connection with matters of record having a prejudicial tendency, an appellate court may conclude that the judgment should be reversed and the cause remanded for a new trial, the province of the jury is not invaded."* (Emphasis ours)

■ In the present case, defendant's counsel in closing argument to the jury in effect conceded that a verdict of $8,000 would be a fair compensation to plaintiff for her injuries and pain and suffering. In view of this concession and of the further argument of defendant's counsel that plaintiff was not entitled to recover for loss of earning capacity, the obvious conclusion is that the jury rejected plaintiff's claim for loss of earning capacity. Plaintiff's first assignment of error relates to rulings of the trial court on objections to defendant's counsel's argument on the loss of earning capacity issue. In view of the demonstrable relationship between the size of the verdict and the jury's determination of such issue, we will consider plaintiff's allegations of error. Grodsky v. Consolidated Bag Co., supra.

The cause was submitted on modified MAI damage instruction 4.01. Plaintiff's attorney argued that plaintiff's damages included her loss of earning capacity, medical expense, pain and suffering, and permanent injury.

He argued that the evidence showed that her injuries had made plaintiff unable to work and that she was entitled to recover for loss of an earning capacity measured by at least one half of her share of the partnership income.

Defendant's counsel acknowledged that plaintiff was entitled to recover her medical expenses. He then stated:

"In addition to that, she has been injured. Nobody denies that, though we do deny what the permanency of those—of those injuries are, and how long they are going to last, and how serious they were.

"Now, there were great injuries at that wreck. You have heard from her own doctors, Dr. McAlhaney and Dr. Snead, that she has recovered, made a great recovery on those; that her foot, Dr. Snead said, will continue to bother her, after long standing on it, or walking, and that there is a limited motion there. We do want you to award her damages for that.

"Dr. Snead said that on his examinations that there was a slight limitation of motion in her neck, and that there was a slight limitation of motion in her back, when she leaned forward, but nothing going backward. We do want you to award her damages for that.

"But we do not want you to award her damages for the loss of wages, which was recovered in this law suit in Springfield a year ago.—

"MR. BRADSHAW:—If it please the Court, I want the record to show that we object to that, because that was a separate law suit, and has nothing to do with this

law suit, and we ask that the jury to be instructed to disregard that argument.

"THE COURT: It will be refused.

"MR. HAYMES: Now, Mr. Jones has tried to do the fair thing about this. But has the other side been fair about it, and have they been fair with you here in this trial of this law suit? They have tried to tell you here that she earned $7,000.00 a year, and that she lost that, and that you were to award her for the remainder of her life $7,000.00 a year that she lost. That is what they are trying to tell you here. They didn't tell you that that was awarded in another suit.

"Have they been fair in this case? They did not even file this case, until after the other suit in Springfield was determined,—

"MR. BRADSHAW:—If it please the Court, I object to that argument as being highly improper. She had a right to file that case as a separate action. That is not proper argument, bringing in another trial. That had nothing to do with this law suit. There was no recovery of damages for wages in the other trial. That was a death action. And I want to renew my objection, and ask the Court to instruct the jury to disregard that argument of Mr. Haymes on that.

"THE COURT: Objection overruled."

On this appeal, plaintiff contends that the rulings of the trial court were prejudicially erroneous because they permitted defendant's counsel to argue that plaintiff had recovered in the wrongful death action for her own personal injuries and loss of earning capacity for which she brought the present action. However, plaintiff's counsel clearly overstates his contention when he states that defendant argued that plaintiff had recovered for her personal injuries in the wrongful death action. By his argument, defendant's counsel acknowledged his liability on this score. The matter questioned was the loss of earning capacity. Defendant, on this appeal, contends that,

in view of plaintiff's inconsistent testimony in this case and the wrongful death case, "it was a perfectly legitimate inference for respondent's [defendant's] counsel to argue that appellant [plaintiff] had been unfair in telling the jury in the instant case that she had tried to claim lost earnings of $7,000 per year when she had recovered for those lost earnings in the wrongful death suit."

Defendant here does not contest the submissibility of plaintiff's claim for loss of earning capacity. Plaintiff's evidence that she regularly worked nine hours a day in the cleaning establishment and the testimony as to the nature of her services, together with the evidence that the permanent nature of her injuries would prevent such activity in the future, authorized the consideration of loss of earning capacity as an element of her damages. Defendant certainly had the right to argue that plaintiff's testimony in the present trial as to the measure of her earning capacity (the partnership profit) should be considered in the light of her testimony at the wrongful death action pertaining to her husband's role in the production of the partnership income. However, defendant had no right to argue that plaintiff had been compensated in the wrongful death action for her loss of her earning capacity. Plaintiff's objection to such argument should have been sustained. In overruling plaintiff's objection and permitting defendant's counsel to pursue such line of argument, the trial court permitted the jury to consider this element of plaintiff's damages in a wholly erroneous light. Defendant's argument went much farther than merely telling the jury that plaintiff had been unfair in her testimony at the two trials. Plaintiff had, by the inconsistency in her testimony at the two trials, placed herself in a position that afforded a basis for fairly attacking her claim. However, such inconsistencies did not warrant the erroneous conclusion which defendant's counsel drew in his argument and which the court approved. Certainly there was no basis for the statement of defendant's counsel which

might have led the jury to infer that plaintiff had been awarded $7,000 per year for life in the wrongful death action. ("They have tried to tell you here that she earned $7,000.00 a year, and that she lost that, and that you were to award her for the remainder of her life $7,000.00 a year that she lost. That is what they are trying to tell you here. *They didn't tell you that that was awarded in another suit."* (emphasis ours))

 While we acknowledge, as defendant states, that control of argument is primarily the province of the trial court and that considerable discretion is accorded the trial judge in this respect (St. Louis Housing Authority v. Barnes, Mo.Sup., 375 S.W.2d 144, 148 [8, 9]; Butcher v. Main, Mo.Sup., 371 S.W.2d 203, 208 [4, 5]), nevertheless, argument which is wholly outside the issues of the case and which misleads and prejudices the jury against a party should not be allowed. The trial court has the duty, upon proper objection, to keep the argument within proper limits. Its failure to do so constitutes a proper ground for relief in this court. Amsinger v. Najim, 335 Mo. 528, 73 S.W.2d 214, 216[5]; Wood v. St. Louis Public Service Co., Mo. Sup., 246 S.W.2d 807, 815[10, 11]; Green v. Ralston Purina Co., Mo.Sup., 376 S.W. 2d 119.

Our conclusion makes unnecessary the consideration of additional assignments of error by plaintiff. The judgment is reversed and the cause remanded for a new trial. In view of the judicial admission of liability, the new trial should be limited to the issue of damages.

Reversed and remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.