**R. J. FREDRICK, Appellant,**

v.

**SENTRY LIFE INSURANCE CO., Respondent.**

**No. WD 32312.**

Missouri Court of Appeals, Western District.

Dec. 22, 1981.

Dean F. Arnold and Donald E. Raymond, Kansas City, for appellant.

John R. Phillips and Penni L. Johnson, Kansas City, for respondent.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

KENNEDY, Presiding Judge.

This is an appeal from a judgment for defendant Sentry Life Insurance Company, upon a jury verdict upon a claim by plaintiff Old Security Insurance Company[1] for recovery of $3,456.48 erroneously (as Old Security claims) refunded to Sentry by Miami Valley Hospital, instead of to Old Security, who was properly entitled thereto. Both Sentry and Old Security had paid the hospitalization claim of one Mildred Candela, claimed by plaintiff Old Security to have been Sentry's obligation.

Old Security's point on this appeal is that the trial court improperly allowed Sentry's counsel to argue to the jury that Old Security should have called for arbitration of the dispute between the parties, as provided in their contract, and that the jury should deny its claim because of its failure to seek arbitration.

The dispute arose in the following way:

Sentry in 1976 sold a block of insurance business to Old Security. Included in the business was a group hospitalization and medical expense policy issued to Mrs. Candela.

Mrs. Candela incurred hospital expense of $3,456.48 (actually more than $3,456.48, but that was all that was refunded), after July 1, 1976. Her disability, however, according to plaintiff's evidence, had originated before July 1, 1976. Under the terms of the contract between Sentry and Old Security, claims based upon disabilities which originated before July 1, 1976, were to be paid by defendant Sentry. Strauss-Fuchs Organization, which represented both Old Security and Sentry, drew a draft upon Old Security for payment of the claim, which was paid by Old Security upon presentment.

When Old Security discovered the claim should have been paid by Sentry, it wrote to Sentry and requested reimbursement. Sentry replied it too had paid the Candela claim to Miami Valley Hospital and therefore could not reimburse Old Security. Old

1. Old Security is in receivership and R. J. Fredrick is the receiver. The action is prosecuted in his name but it is more convenient to refer to the plaintiff as Old Security, as the parties have done in their briefs.

Security then wrote Miami Valley Hospital for a refund. Miami Valley Hospital, in the meantime apparently discovering it had been paid twice for the same account, had issued its check for a refund. Its refund was made, however, to Sentry. It so advised Old Security.

Old Security on November 28, 1978, mailed a copy of the Miami Valley Hospital letter to Sentry, and once again requested reimbursement. Sentry replied by letter of December 4 acknowledging receipt of the Old Security letter, and stating:

> I apologize for previously overlooking the credit in our file, as we do have record of the $3,456.48 check sent to us by Miami Valley Hospital.
>
> Authorization has been requested to make reimbursement to you. There will be a slight delay, but I'll be in touch with you as soon as I am able to release reimbursement.

This letter was signed by "Mary Hanson, Technical Supervisor-Policy Benefits".

After the appointment of the receiver, Mr. Allen of Sentry told Mr. Harbin of Old Security on one or two occasions that Sentry "probably" owed the Candela refund to Old Security and would get around to paying it "one of these days".

Sentry never did pay Old Security and on February 19, 1980, Old Security filed suit against Sentry for recovery of the amount it had paid on the Candela claim.

The contract by which Sentry sold the insurance business to Old Security contained the following provision:

> Upon the payment of any disputed claim by Old Security, and at the request of Old Security, the dispute shall be submitted to arbitration as follows: ... The arbitrators so chosen shall consider such facts and hear such evidence as is required and shall make their findings within thirty (30) days from and after their appointment. Should the arbitrators be unable to reach a decision or resolve the dispute, then, and in that event, the umpire shall be called in and the Board, as then constituted, shall render a decision which shall be binding and final on both parties.

In the discussions between the companies on the Candela claim no mention was ever made of arbitration.

Sentry did not set up the failure to arbitrate as a defense to Old Security's claim. No instruction on that subject was tendered or given. Indeed the failure to arbitrate would have been no defense, because a contract requirement for arbitration was unenforceable under § 435.010, RSMo 1978.[2]

Sentry's argument to the jury emphasized the arbitration provision in the contract, and argued that that was the procedure which should have been followed. If it had been, Sentry's attorney argues, "We wouldn't have bothered you with this trial today... I can tell you that they didn't submit this to arbitration, which would have avoided a need for this trial."

The arbitration argument injected a false issue into the case. It put forward as a defense to Old Security's claim that it had failed to submit its claim to arbitration. The failure to submit to arbitration was not an issue in the case. Sentry's argument was improper and plaintiff Old Security's objection to it should have been sustained. *Thomas v. Jones*, 409 S.W.2d 131, 138 (Mo. 1966); *Butcher v. O'Connor*, 401 S.W.2d 490, 494 (Mo.1966).

Was the argument prejudicial? We think so. The jury could very well have adopted Sentry's argument that Old Security should lose its claim because it had not submitted to arbitration. It could have believed on the basis of Sentry's argument that Old Security had initiated an unnecessary and vexatious lawsuit. The argument was likely to stir up resentment among the jurors that they were being imposed upon by Old Security's litigiousness. *See Jackman v. St. Louis & H. Ry. Co.*, 206 S.W. 244 (Mo.App. 1918). Sentry's argument was akin to an

---

**2.** The Old Security-Sentry contract was dated July 1, 1976, long before our Uniform Arbitration Act, which became effective August 13, 1980, and applied to contracts made after that date. Secs. 435.350–435.470, RSMo 1978 (Ann. Supp.1980).

argument that a plaintiff should lose because he failed to enter into settlement negotiations with defendant, an argument held everywhere to be prejudicially erroneous. 75 Am.Jur.2d, *Trial,* § 255 (1974); Annot.: Propriety and prejudicial effect of argument or comment by counsel as to settlement negotiations during trial of personal injury action, 99 A.L.R.2d, 737 (1965).

Sentry seeks to justify the argument on two grounds. It argues first that Old Security itself introduced the arbitration issue. It points to the testimony of plaintiff's witness Harbin, brought out on direct examination, that no mention was made of arbitration in his contacts with Sentry's representatives about this claim. Harbin explained that "arbitration agreements are not valid in Missouri and so we would wind up with the courtroom here anyway".

This testimony was not objected to by defendant. It does not now claim that the witness's testimony was incorrect in its legal conclusion. The obvious strategy of plaintiff Old Security was to prevent the jury's being drawn away by a false issue by the arbitration provision in the contract, which was in evidence.[3] The plaintiff did not by this evidence invite the criticized jury argument.

Defendant Sentry next says that his argument was relative to the issues of punitive damages, and to the issue of "the good faith with which Sentry had approached Old Security's request for a refund".

The punitive damages issue, however, was no longer in the case when the argument was made. No punitive damage instruction was given, and the arbitration argument cannot be justified by the fact that punitive damages had been claimed in the petition, and had been mentioned in plaintiff's opening statement.

Sentry calls our attention to the fact that plaintiff's action was one in conversion, and that Sentry's good faith or bad faith, or the reasonableness of its treatment of Old Security's demand for the refund, was some-

how an issue in the case. They quote the following statement from 18 Am.Jur.2d, *Conversion,* § 44 (1965): "Although an absolute or unqualified refusal to surrender possession of personal property to one entitled thereto constitutes a conversion, a limited or qualified refusal to surrender the possession of property is not, per se, a conversion thereof." (Footnotes omitted). There is nothing in the evidence in this case that Sentry before the commencement of the lawsuit ever made any "limited or qualified refusal" to pay the refund to Old Security. It did not deny owing it, according to the evidence, but it did not pay it and never gave any reason for not paying it. The form of plaintiff's action, and the legal rules to which defendant Sentry cites us, offer no justification.

The judgment is reversed and the cause remanded for a new trial.

All concur.

---

**3.** In such a situation a withdrawal instruction is sometimes given, MAI 34.02; see, e.g., *Gil-*

*more v. Union Construction Co.,* 439 S.W.2d 763, 767–768[12] (Mo.1969).