**James Thomas RAINS and Sharon R. Rains, Plaintiffs–Appellants,**

v.

**Justin Lee HERRELL, Defendant–Respondent.**

**No. 21058.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 11, 1997.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 4, 1997.

Application to Transfer Denied Sept. 30, 1997.

Steven E. Marsh, Hulston, Jones, Gammon & Marsh, Springfield, for plaintiffs–appellants.

Tamara F. deWild, Newberry, Haden, Cowherd, Bullock & Keck, L.L.C., Springfield, for defendant–respondent.

PARRISH, Judge.

This is an appeal of a judgment in an action for personal injuries and for loss of consortium arising from an automobile accident. Judgment was entered, following a jury trial, in favor of plaintiff James Thomas Rains for personal injuries. Judgment was entered in favor of defendant Justin Lee Herrell on plaintiff Sharon R. Rains' claim for loss of consortium. By this appeal plaintiff James Thomas Rains seeks a new trial as to damages in his personal injury claim. This court affirms.

On March 3, 1993, James Thomas Rains was involved in a motor vehicle accident in Christian County when the vehicle he was operating collided with a vehicle driven by Justin Lee Herrell. Herrell's vehicle was meeting Mr. Rains' vehicle. The Herrell vehicle left 58 feet of skid marks starting in its lane of travel and ending in Rains' lane of travel where the accident occurred.

Mr. Rains testified that he experienced headaches, backaches and stiffness the evening following the accident. He was asked how he felt the day after the accident. He answered, "I was real sore, and I had a real sharp pain in my back, right about the bottom of my shoulder blade, had a real bad headache. My neck was stiff, and just generally felt terrible." He was treated by a chiropractor, Dr. Dinwiddie, for about six months after the injury and missed work "right at two months, just a few days short."

Mr. Rains received additional treatments from Dr. Dinwiddie after the initial six-month treatment period. Dr. Dinwiddie referred him to Dr. McMillin, a spinal orthopedist. Dr. McMillin did not believe further diagnostic testing was necessary. He recommended physical therapy and injections of Marcaine and cortisone. Defendant underwent physical therapy but did not follow through on the injections recommended by Dr. McMillin.

Mr. Rains was also referred to a neurosurgeon, Dr. Briggs, who recommended "trigger-point-release techniques and maybe injections." Dr. Briggs suggested that Mr. Rains consult with Dr. Winkler, another medical doctor, for those measures.

Dr. Winkler prescribed pain medication and physical therapy. Mr. Rains underwent physical therapy three times a week for about a month. His report at the time of discharge stated he was essentially pain free.

Mr. Rains testified he lost wages of approximately $4,400. There was evidence of medical bills in excess of $7,500, over $5,000 of which were charges for Dr. Dinwiddie's services. The jury awarded damages in the amount of $1,190.

Plaintiff James Thomas Rains presents three claims of trial court error. He contends the trial court erred in denying the motion for new trial because the amount of damages the jury awarded "was against the weight of the evidence, not supported by substantial evidence, contrary to the uncontroverted and undisputed evidence, contrary to the defendant's own evidence and concessions, inadequate, and grossly and shockingly inadequate," (Point I) and because of defense counsel's "disparaging and inflammatory remarks about plaintiffs' counsel" during closing argument (Point III); and the trial court erred in refusing a jury instruction tendered by plaintiff "based on 'per se' negligence of being on the wrong side of the road pursuant to MAI 17.13 and 17.17," (Point II).

Point II will be addressed first. The petition on which this case was tried includes the allegation that Justin Lee Herrell "operated and drove his vehicle on the wrong side of the road and failed to drive his vehicle upon the right half of the roadway in violation of § 304.015, RSMo." There was testimony that the collision between the Rains' vehicle and the Herrell vehicle occurred on Rains' side of the roadway. Relying on the requirement of § 304.015, RSMo 1986, that "[u]pon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, . . . ," Rains submitted the following proposed verdict-directing instruction, patterned after MAI 17.13 and 17.17 [1978 Revision], on the theory that Mr. Herrell was negligent per se:

Your verdict must be for plaintiff James Thomas Rains if you believe:

First, defendant's automobile was on the wrong side of the road, and

Second, as a direct result of such conduct, plaintiff James Thomas Rains sustained damaged.

The trial court refused the proposed instruction. It gave the following verdict director patterned after MAI 17.01 [1980 Revision], MAI 17.13 and 17.17 [1980 Revision] and MAI 11.02 [1978 Revision].

Your verdict must be for plaintiff James Thomas Rains if you believe:

First, defendant's automobile was on the wrong side of the road, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence, plaintiff James Thomas Rains sustained damage.

The term "Negligent" [sic] or "negligence" as used in this instruction means the failure to use that degree of care that a very careful and prudent person would use under the same or similar circumstances.

■ Mr. Rains correctly asserts that his petition pleaded an action for negligence per se and that there was evidence to support submission of his personal injury claim on that basis. *See King v. Morgan,* 873 S.W.2d 272, 275 (Mo.App.1994). However, for instructional error to constitute reversible error there must be a showing of prejudice. Reversible error exists only if the merits of the action were affected by the erroneous instruction. "[I]n order to reverse a jury verdict on grounds of instructional error, the instruction in question must have misdirected, misled, or confused the jury." *DeLaporte v. Robey Building Supply, Inc.,* 812 S.W.2d 526, 530 (Mo.App.1991).

■ Rains' allegation of instructional error is directed to the jury being required to find negligence rather than being directed that negligence occurred. The jury found Herrell was negligent. The jury was not misdirected, misled or confused with respect to the question of liability.

■ Rains further argues that the instruction "effectively allowed [Herrell] to argue contributory negligence, thereby confusing and misleading the jury and resulting in a compromise verdict as to the amount of dam-

ages awarded." That argument is likewise without merit. There was no claim of comparative fault. No contributory negligence instruction was given. The jury was instructed with respect to damages according to MAI 4.18 [1991 New]:

If you find in favor of plaintiff James Thomas Rains, then you must award plaintiff James Thomas Rains such sum as you believe will fairly and justly compensate plaintiff James Thomas Rains for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence.

The jury is presumed to have followed the court's instructions. *Alack v. Vic Tanny Int'l. of Missouri, Inc.,* 923 S.W.2d 330, 338 (Mo. banc 1996); *Kohler v. McNeary,* 498 S.W.2d 796, 797 (Mo.1973). The error in failing to instruct on the basis of negligence per se was harmless. *Id.* Point II is denied.

Point I is directed to the trial court's denial of Rains' motion for new trial. It asserts abuse of discretion in denying the motion because of the "amount of damages awarded, only $1,190.00." Point I includes three subparagraphs summarizing evidence and arguments by Mr. Herrell's trial counsel. Mr. Rains contends that the evidence and arguments support his claim that the verdict was against the weight of the evidence and was not supported by substantial evidence; that the amount of damages was "grossly and shockingly inadequate."

■ To the extent Point I alleges the amount of damages was inadequate in that it was against the weight of the evidence, it presents nothing for appellate review. *Christ v. Tice,* 578 S.W.2d 319, 322 (Mo.App. 1979); *Picone v. DeStefano,* 453 S.W.2d 671, 672 (Mo.App.1970); *Parks v. Midland Ford Tractor Co.,* 416 S.W.2d 22, 26 (Mo.App. 1967); *Schneider v. Southwestern Bell Telephone Co.,* 413 S.W.2d 16, 18–19 (Mo.App. 1967). As explained in *Homeyer v. Wyandotte Chemical Corp.,* 421 S.W.2d 306 (Mo. 1967):

In a tort action the determination of the amount to be awarded for personal injuries is a matter resting primarily in the discretion of the jury in that it involves the

credibility of witnesses and the weight and value to be given their testimony on a fact issue. *Pinkston v. McClanahan*, Mo., 350 S.W.2d 724, 729[5] [ (1961) ]; *Combs v. Combs*, Mo., 284 S.W.2d 423, 425[2] [ (1955) ]; *Coghlan v. Trumbo*, Mo., 179 S.W.2d 705–706[4] [ (1944) ]. The trial court has a wide discretion in ruling a motion for new trial which alleges that the damages awarded are inadequate since that court may take into consideration the credibility of the witnesses and may weigh the evidence. *Boehmer v. Boggiano*, Mo., 412 S.W.2d 103, 110[8] [ (1967) ]. The appellate court, however, may not pass on the weight of the evidence in reviewing the action of the trial court. *Coghlan v. Trumbo*, Mo., 179 S.W.2d 705, 707[10].

*Id.* at 309.

██ Rains further asserts, however, in the first subparagraph of Point I, as was asserted in his motion for new trial, that the amount of damages was inadequate to an extent that it demonstrates juror prejudice and passion. He contends the amount of damages indicates "the verdict resulted from the bias, prejudice, passion and misconduct of the jury." A claim that the amount of damages is so shocking and grossly inadequate as to indicate the damages portion of a verdict was due to passion and prejudice is reviewable on appeal. *Id.*, citing *Boehmer v. Boggiano, supra*.

██ In reviewing Mr. Rains' claim that the amount of damages was so inadequate as to indicate bias and prejudice on the part of the jury, the evidence is viewed in the light most favorable to the verdict. *Boehmer*, 412 S.W.2d at 110. The only evidence considered is that which supports the trial court's ruling denying the motion for new trial. *Kenniston v. McCarthy*, 858 S.W.2d 268, 271 (Mo.App. 1993).

██ Although one witness, Dr. Dinwiddie, testified that the injuries Mr. Rains received from the accident were extensive, there was contrary evidence. Mr. Rains filled out a questionnaire when he consulted Dr. Dinwiddie concerning his injuries and medical history. The questions asked included, "Have

you had same or similar symptoms before the accident?" Mr. Rains answered, "Yes."

While Mr. Rains and Mr. Herrell were at the accident scene, Mr. Rains told Mr. Herrell he was not hurt. After the accident, Mr. Rains assisted in loading hay that had been on the pickup truck he was driving at the time of the accident onto another pickup in order to remove the hay from the scene of the accident. Mr. Herrell was asked, "What was Mr [sic] Rains' involvement in loading up the hay? In other words, what part of the job was he doing?" Mr. Herrell answered, "Mr. Rains got in the bed of the truck and stacked most of the hay."

The highway patrolman who investigated the accident, Officer Ronald L. Cole, was asked whether he inquired if the drivers were hurt. He answered that he believed he did. The officer was asked if he made observations himself concerning whether either of the drivers appeared to be hurt. He answered that he did. He was asked, "Can you tell the jury what you concluded about that?" Officer Cole answered, "There's no injuries apparent."

There was evidence that one of the physicians to whom Dr. Dinwiddie referred Mr. Rains recommended cortisone injections but that Mr. Rains did not follow the recommendation—he did not receive the injections. A neurological test for motor weakness and a manual motor exam for strength was performed on Mr. Rains and appeared normal. His lumbar range of motion, forward flexion, side bending, extension, and rotation appeared normal. An MRI was performed. Dr. Dinwiddie received a report from the medical doctor who ordered the test. Dr. Dinwiddie was asked what the report showed. He answered, "Well, it says here a MRI was ordered, and was within normal limits."

Mr. Rains was referred to a rehabilitation center for physical therapy. His major complaint was pain in his mid-back region. He went to the treatment center for therapy three times a week for one month. The discharge report states that at the time of discharge Mr. Rains was essentially pain free.

The jury was free to believe or disbelieve any or all of Mr. Rains' evidence concerning his personal injuries. *Kenniston v. McCarthy, supra.* It could have believed the injuries that Dr. Dinwiddie contended Mr. Rains sustained were not present or were not present to the extent Dr. Dinwiddie suggested, or that the injuries were not caused by the accident. Similarly, with respect to the claim of lost income, the jury could have believed any injuries Mr. Rains sustained did not warrant him being off work the amount of time he testified he missed.

"The determination of the amount of damages for personal injuries in a tort action falls primarily within the jury's discretion because it involves the credibility of the witnesses and the weight to be given their testimony." *Id.* The trial court did not abuse its discretion in finding the amount of damages was not inadequate so as to demonstrate jury bias and prejudice.[1]

The second subparagraph of Point I contends the amount of damages awarded was less than "uncontroverted special damages proven at trial" and less than the amount of damages Herrell "conceded should be awarded" if there was liability. For that reason, Mr. Rains argues, the trial court abused its discretion in denying his motion for new trial.

The argument that the amount of damages was less than "uncontroverted special damages proven at trial" is, in essence, an attempt to again argue that the amount of damages awarded was against the weight of the evidence. As previously pointed out, allegations that amounts of damage are inadequate as being against the weight of the evidence present nothing for appellate review. Appellate courts do not weigh the evidence in cases tried before juries. *Housing Authority of City of Rolla v. Kimmel,* 771 S.W.2d 932, 940 (Mo.App.1989).

The only issue for review in Rains' second subparagraph to Point I is the allegation that Herrell "conceded" there were damages of $10,000. It is based on statements made during closing argument. Rains argues in

his brief, "Herrell's counsel acknowledged, however, that *if* the Jury found Herrell was liable, *then* the Plaintiffs were entitled to an award of $10,000.00." This argument is apparently based on the following statements made by Mr. Herrell's trial counsel during closing argument:

> All right, now, I'm going to suggest a figure, because, again, it's your decision as to whether or not there's liability, but if you find there is liability on the part of Justin Herrell, I think that an appropriate dollar figure in compensation for both Mr. and Mrs. Rains would be $10,000.00. I do so with knowledge that the—with the size of the claimed medical and the size of the claimed lost income, but I don't think all of that is fairly attributable to this wreck. I don't believe Dinwiddie's bills are fair or reasonable, and it's up to you all to decide that. Just because he says it doesn't make it so.

Rains cites two cases as authority for his argument, *Artstein v. Pallo,* 388 S.W.2d 877 (Mo. banc 1965), and *Thomas v. Jones,* 409 S.W.2d 131 (Mo.1966). Neither is on point.

In *Thomas* the court stated that defense counsel "in effect conceded" that a verdict in the amount of $8,000 would be fair compensation for pain and suffering under the facts of that case. 409 S.W.2d at 136. The jury awarded $7,000 damages.

*Thomas* was reversed and remanded for a new trial on the issue of damages. Mr. Rains argues, "The Supreme Court reversed and remanded the case for trial on the issue of damages and held that the plaintiff was not precluded from seeking appellate review even though the verdict was not found to be grossly or shockingly inadequate." He erroneously suggests the reason the court reversed the judgment in *Thomas* was that there was "a concession of a certain amount of damages and improper argument," and argues the same circumstances exist in this case. That is an incorrect reading of *Thomas.*

1. Other cases upholding trial courts' denials of motions for new trial based on allegations that amounts of damages were so inadequate that they showed bias and prejudice on the part of the jury include *Homeyer v. Wyandotte Chemical Corp.,* 421 S.W.2d 306 (Mo.1967); *Kreglinger v. Stillwell,* 592 S.W.2d 228 (Mo.App.1979); and *Chapman v. King,* 396 S.W.2d 29 (Mo.App.1965).

In *Thomas* the only issue that was tried was the issue of damages. The issue of liability was admitted on trial. *See Thomas,* 409 S.W.2d at 132. The error that caused the case to be reversed was the trial court's overruling an objection to the defense's argument that the plaintiff in the case had recovered damages for loss of wages in another lawsuit, thereby enabling defendant to argue that plaintiff was not entitled to receive compensation for loss of wages because she had been compensated for that loss in the other action.

In *Thomas* the court pointed out that defense counsel in closing argument, "in effect conceded that a verdict of $8,000 would be a fair compensation to plaintiff for her injuries and pain and suffering." *Id.* at 136. The court continued, "In view of this concession *and of the further argument of defendant's counsel that plaintiff was not entitled to recover for loss of earning capacity, the obvious conclusion is that the jury rejected plaintiff's claim for loss of earning capacity." Id.* [Emphasis added.]

*Thomas* held that the trial court erred in permitting evidence and argument of counsel suggesting there had been compensation awarded in another lawsuit for the same loss for which recovery was sought in that suit. It did not reverse the judgment of the trial court because it was for less damages than that suggested by defense counsel in closing argument. It is factually dissimilar to this case.

*Artstein v. Pallo, supra,* the other case on which Mr. Rains relies for the proposition he asserts in subparagraph 2, is likewise different from the present case. In *Artstein* the parties agreed that if the plaintiff in the case were entitled to recovery, the damages that were awarded by the jury were grossly inadequate. The court held, "On the record before us, the verdict does not bespeak a proper determination of liability and also an award of adequate damages. We cannot say with certainty that the jurors did not slight the determination of one or both of these necessary elements and, in effect, return a compromise verdict." 388 S.W.2d at 882. The court held there was jury misconduct that justified a new trial on all issues.

 The argument that Mr. Rains contends was a concession of an amount of damages that exceeded what the jury awarded was not a clear and unequivocal admission that Mr. Rains suffered $10,000 in damages as a result of the automobile accident. It was a suggestion of an amount appropriate for the jury's consideration if it found liability to both Mr. Rains and his wife on a loss of consortium claim.[2]

Matters presented in closing argument are intended to help the jury understand the evidence in a case. As the jury was required to be told in pattern instruction MAI 2.01 [1978 Revision] in effect at the time of the trial of this case,[3] what is said in closing argument is not proof of a fact.[4]

The jury was instructed by Instruction No. 8 that if it found in favor of Mr. Rains, it was to award him such sum as it believed would fairly and justly compensate him for any damages the jury believed he sustained and was reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence. "The jury is bound to follow the trial court's instructions and we presume that it will even to the extent that doing so might require the jury to ignore specific argument of counsel in conflict." *Graves v. Atchison–Holt Electric Coop.,* 886 S.W.2d 1, 4 (Mo.App.1994). Mr. Rains' claim in subparagraph 2 of Point I is without merit.

The third subparagraph of Point I complains about remarks made by Mr. Herrell's trial attorney during closing argument characterizing the lawsuit as "a Dinwiddie lawsuit," referring to the chiropractor who treated Mr. Rains, and suggesting that Dr. Dinwiddie referred Rains to a particular at-

---

2. The jury found for Mr. Herrell on Mrs. Rains' loss of consortium claim. There was no appeal on that claim.

3. The legal file did not include the cautionary instruction given in this case.

4. The same language appears in MAI 2.01 [1996 Revision].

torney as he had done with other patients. Rains asserts that these comments improperly appealed to the bias, prejudice and passion of the jury; that they encouraged misconduct by the jury. He contends the trial court, therefore, erred in denying his request for a new trial.

During closing argument, Mr. Herrell's trial attorney commented on statements Dr. Dinwiddie made during his testimony. He suggested that, based on the initial examination of Mr. Rains by Dr. Dinwiddie, "Doctor Dinwiddie decided that this man needed a lawyer and needed a lawsuit, and sent him, as he has other patients, to Lindell Church, and that's why we're here today." The attorney continued, "That's harsh, and I tried to figure out a plain but nice way of saying it, and I can't figure out a nice way to do so, so I just have to say it plain. This is a Dinwiddie lawsuit."

Mr. Herrell's attorney suggested Dr. Dinwiddie erroneously told Mr. Rains he would have to see chiropractors the rest of his life. He added, "You know, to say that to a patient when it isn't true is just flat wrong. It's a disservice to Mr. Rains, and I think it explains perhaps why there's five thousand plus in Dinwiddie bills already. It's just wrong."

◼ Rains' trial attorney did not object when the statements were made that he now contends were improper. "Failure to properly object to an argument at the time it is made to a jury results in a waiver of any right to complain of the argument on appeal, even if the point is preserved in an after trial motion." *Nishwitz v. Blosser*, 850 S.W.2d 119, 124 (Mo.App.1993). The failure to object when the statement was made during closing argument is fatal to a claim on appeal that the argument was improper. *Dalcom Services v. Independent Freightway*, 895 S.W.2d 619, 622 (Mo.App.1995). The claim of error in Rains' third subparagraph to Point I was not preserved for review on appeal. Point I is denied.

Point III is also directed to the same statements made during closing arguments concerning Dr. Dinwiddie. Point III contends the trial court erred and abused its discretion in denying Mr. Rains' motion for new trial

because the statements were "disparaging and inflammatory remarks about [Rains'] counsel and [Rains'] doctor ... which resulted in the inadequate damage award ... in that such remarks were highly prejudicial, improper and unwarranted by proof, and were intended to, and did, arouse the passion and prejudice of the jury resulting in manifest injustice to [Rains] and a miscarriage of justice."

As heretofore explained, Mr. Rains did not object to the statements about which he now complains during closing argument, thereby waiving his right to raise the issue on appeal. Notwithstanding, Rule 84.13(c) permits plain errors affecting substantial rights to be considered on appeal, in the discretion of the reviewing court, although the errors were not properly raised or preserved "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." By alleging manifest injustice and miscarriage of justice, Mr. Rains tacitly recognizes he failed to preserve the allegation of error for review by this court.

◼ Comments made during closing arguments rarely rise to the level of plain error. *Slankard v. Thomas*, 912 S.W.2d 619, 629 (Mo.App.1995). This court finds no plain error with respect to the statements about which Mr. Rains complains.

There was evidence that on Mr. Rains' first visit to Dr. Dinwiddie, Dr. Dinwiddie asked whether he had an attorney. Dr. Dinwiddie was told he did not. That same day, Dr. Dinwiddie sent Mr. Church a report letter concerning Mr. Rains' condition.

Dr. Dinwiddie was asked, "So, on the very day that you've seen Mr. Rains and he's come in to you without the benefit of a lawyer, he must have obtained a lawyer, otherwise you wouldn't have sent the report to Mr. Church? Is that a fair statement?" Dr. Dinwiddie answered, "Yes, it is." Dr. Dinwiddie testified that he was familiar with Mr. Church; that he had been involved in other cases in which his patients were clients of Mr. Church.

Dr. Dinwiddie's testimony included reviewing reports he received from medical doctors

concerning Mr. Rains' condition. The reports revealed various objective tests given to Mr. Rains that disclosed his condition as being within normal limits. Additionally, an MRI test revealed no abnormality.

The jury was entitled to consider the variation between the continuing treatment suggested as necessary by Dr. Dinwiddie and the findings of medical doctors that Mr. Rains demonstrated no abnormalities. *See Lenhard v. Davis*, 841 S.W.2d 295, 297 (Mo. App.1992). The remarks about which Point III complains are consistent with the jury's right to reject or minimize Dr. Dinwiddie's evaluation because it was inconsistent with the reports of the medical doctors that Mr. Rains consulted. Point III is denied. The judgment is affirmed.

MONTGOMERY, C.J., and CROW, P.J., concur.