Raymond **BUCKALLEW** and Dorothy Minor, Respondents,

v.

James Alvin **McGOLDRICK**, et al., Appellant.

No. WD 49500.

Missouri Court of Appeals, Western District.

Aug. 1, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1995.

Application to Transfer Denied Nov. 21, 1995.

---

Brenda Wall–Swedberg, Oswald & Cottey, Kirksville, for appellant.

Jay Benson, Philip J. McIntosh, Campbell & Benson, Kirksville, for respondents.

Before FENNER, C.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

On December 23, 1986, vehicles operated by James Alvin McGoldrick and Raymond Buckallew were involved in a near head-on collision. The accident took place on Route U in Schuyler County, Missouri on a foggy morning before 7:00 a.m. Following a trial on the matter, a jury found that both drivers were zero percent at fault. Mr. McGoldrick appeals the verdict, arguing that the trial court erred (1) by refusing to allow Mr. McGoldrick to question the jury panel on an "insurance question"; and (2) by denying Mr. McGoldrick's motion for a mistrial because multiple errors in the instructions confused the jury. The judgment is affirmed.

The record reveals that a petition for damages was filed against Mr. McGoldrick on September 28, 1988 by American Family Mutual Insurance Company and Dorothy Minor, the owner of one of the vehicles involved in the collision. The petition was later amended, and American Family Mutual Insurance Company was removed as a plaintiff and replaced by Mr. Buckallew. On January 17, 1991, Mr. McGoldrick filed his answer and

counterclaim for damages. On that same day, his wife, Ethyl McGoldrick, also filed a petition in a separate case for damages and loss of consortium arising from her husband's injuries.

The cases were consolidated and heard before a jury on February 14, 1994. Prior to voir dire, counsel for Mr. McGoldrick apparently requested permission to ask, as part of voir dire, whether the prospective jurors held an interest in American Family Mutual Insurance Company. Both sides concede that permission to make such a query was granted. Nonetheless, counsel for Mr. McGoldrick terminated voir dire questioning and turned the proceedings to the court without asking the "insurance question." The court excused the panel members for lunch and told them that, while the panel was gone, the attorneys would "be working with the Court to determine the identity of the jurors in this case." [1]

While the parties were in the judge's chambers, counsel for Mr. McGoldrick realized that they had forgotten to ask the "insurance question" and requested leave to resume their voir dire. Counsel for Mr. Buckallew and Ms. Minor objected. The court denied the request, explaining:

Over the course of the years, hearing these kinds of cases, I recall no instance where anyone was ever excused for making a response to those so-called insurance questions. Generally, the question is designed to inject into the case the element of insurance, even though it is cleverly disguised as an attempt to seek out potential bias on the part of witnesses. My experience is, seldom it shows any, if any.

The opportunity to re-call the panel at this time would have the effect of emphasizing that, and would, in my view, be prejudicial to do that at this time. So the request is denied at this time.

A jury was then selected, and trial lasted four days. Jury deliberations commenced at 1:48 p.m. on the final day of trial. At 5:06 p.m., the jury returned to the courtroom and the foreperson, Juror Schmitter, requested clarification of the verdict forms. Juror Schmitter pointed out that Verdict Forms A and B conflicted with Verdict Form C, since the "total" line for the assessment of fault of Mr. McGoldrick and Mr. Buckallew differed. All three forms should have read as follows:

... [W]e, the undersigned jurors, assess percentages of fault as follows:

| | |
|---|---|
| Defendant James Alvin McGoldrick | _____% (zero to 100%) |
| Plaintiff Raymond Buckallew | _____% (zero to 100%) |
| TOTAL | _____% (zero OR 100%) |

The "total" line in Forms A and B read "zero to 100%," however, while Form C correctly read "zero OR 100%." The court corrected the discrepancy, and the jury returned to its deliberations.

At 5:24 p.m., the jury again returned to the courtroom with another question, this time on Instruction No. 9. Juror Schmitter said to the court, "We would like to request that you review [the instructions] totally, so we don't have to do this any more. Is that possible?" The court reviewed Instruction No. 9 and informed the jury that the instruction was correct. The following dialogue then took place:

JUROR SCHMITTER: Your Honor, we are confused. There are other forms in there that do not read the same as that, and we are—we would like some more clarification.

THE COURT: What I can tell you, at this time, is to read the instructions carefully. Consider them in conjunction with all of the other instructions. And, it's my belief that they do correctly direct you to apply the law in this case.

JUROR SCHMITTER: Thank you.

Shortly after the jury returned to its deliberations, counsel approached the bench to tell the court that they had discovered an

---

1. At that time, voir dire was essentially complete, though several panel members were scheduled to take part in private interviews during the lunch break, because they did not wish to speak about certain matters in front of the other members.

error in a verdict director, Instruction No. 17. Counsel for Mr. McGoldrick requested a mistrial, stating that the error would not be cured by correcting the instruction, since the jurors had already been deliberating for four hours. The court denied the motion for mistrial and excused the jury for dinner. During the dinner break, a new Instruction No. 17 was drafted. The corrected instruction read as follows:

> In your verdict you must assess a percentage of fault to defendant James A. McGoldrick whether or not plaintiff Raymond Buckallew was partly at fault if you believe:
>
> First, defendant James A. McGoldrick was on the wrong side of the road, and
>
> Second, defendant James A. McGoldrick was thereby negligent, and
>
> Third, such negligence of defendant James A. McGoldrick directly caused or directly contributed to cause any damage defendant James A. McGoldrick may have sustained.

The jury returned from dinner at approximately 6:44 p.m., at which time the judge spoke to them as follows:

> THE COURT: Ladies and gentlemen of the jury, as I previously explained to you, you must consider all of the instructions together. While you were at dinner, Instruction #17, which was in the original package, has been changed.
>
> I'm now giving the instructions back to the bailiff and asking you to take the instructions of the Court back to the jury room and resume your deliberations.

At 8:57 p.m., the jury returned with a verdict finding both Mr. McGoldrick and Mr. Buckallew zero percent at fault for the accident. Additionally, the jury determined that Mrs. McGoldrick did not sustain damage. This appeal follows.

### I.

In his first point on appeal, Mr. McGoldrick claims that the trial court erred in failing to allow Mr. McGoldrick to question the jury panel on the issue of insurance, since the trial court has no discretion to deny a party the right to ask a proper "insurance question." Mr. McGoldrick complains that the court's interdiction improperly prevented him from determining how many of the selected jurors held an interest in American Family Mutual Insurance Company.

It appears that prior to voir dire, Mr. McGoldrick's counsel requested that the judge grant permission to question members of the jury panel on the issue of insurance. Mr. McGoldrick admits that the judge consented to this request. Counsel then forgot to ask the intended question before terminating Mr. McGoldrick's portion of voir dire, and the judge denied counsel's subsequent request to reopen voir dire for the apparent purpose of asking the "insurance question."

"Litigants have a right to ascertain which jury panel members are, or might be, interested in the result of a lawsuit, and in particular, plaintiffs have the right to learn if any venireman is connected with an insurance company interested in the litigation." *Carothers v. Montgomery Ward and Co.,* 745 S.W.2d 170, 172 (Mo.App.1987). A trial court is normally afforded wide discretion in ruling on a motion for a new trial involving questions of fact. *Id.* The trial court has no discretion as to questions of law, however, and the right to ask a proper "insurance question" is an issue of law. *Id.* Although the trial court may utilize its discretion to set boundaries regarding the form of the question, *Ivy v. Hawk,* 878 S.W.2d 442, 445 (Mo. banc 1994), the question generally encompasses whether members of the panel or their families are employed by, or have a financial interest in, the relevant insurance company. *Id.; Carothers,* 745 S.W.2d at 172.

Mr. McGoldrick argues that the court's ruling mandates a new trial, since it had no discretion to disallow the "insurance question." In particular, Mr. McGoldrick relies on a recently published Missouri Supreme court case, *Ivy,* 878 S.W.2d 442. In *Ivy,* the trial court denied a party's request to ask an "insurance question" during voir dire, since the judge believed it was unlikely any jurors would work for or have a financial interest in the relevant insurance company. On appeal, the reviewing court held that the judge had erred, explaining that a trial court has no

discretion to prohibit one from asking a preliminary "insurance question" when it is clear that the insurance company is in fact interested in the outcome of the case. *Id.* at 444–45.

Mr. McGoldrick claims that his own case is similar to the facts of *Ivy,* in that the court in this case based its ruling on the unlikelihood that a prospective juror would in fact have an interest in American Family Mutual Insurance Company. The judge specifically stated that he recalled "no instance where anyone was ever excused for making a response to those so-called insurance questions." He also indicated that he believed the questions were often designed to inject the issue of insurance into the case even though "cleverly disguised as an attempt to seek out potential bias on the part of witnesses."

If the judge had simply denied leave to ask the "insurance question" based on these reasons, reversal would be necessary, since *Ivy* reveals that the court has no discretion to refuse one's right to ask a proper "insurance question." Mr. McGoldrick's case is distinguishable from *Ivy,* however, because the court initially granted counsel the right to ask the proffered question. It was only after counsel "forgot" to ask the question during voir dire that the court made the denial which is now contested.

Although, in making this denial, the judge did mention the unlikelihood that a juror would hold an interest in the insurance company, the judge based his decision on the prejudicial effect which would result from resuming voir dire for the sole purpose of asking this "insurance question." He explained, "The opportunity to re-call the panel at this time would have the effect of emphasizing [the insurance issue], and [it] would, in my view, be prejudicial to do that at this time."

■ Juries tend to return larger verdicts when informed that an insurance company, rather than the defendant, will pay the judgment. *See Mock v. J.W. Githens Co.,* 719 S.W.2d 79, 83 (Mo.App.1986). To guard against such a result, Missouri has adopted a three-step process governing voir dire insurance questioning. A litigant must (1) obtain the judge's approval of the proposed "insur-

ance question" out of the hearing of the panel; (2) ask only one "insurance question"; and (3) refrain from asking the question first or last in a series of questions, so as to unduly highlight the issue of insurance. *Ivy,* 878 S.W.2d at 445. When Mr. McGoldrick's counsel requested the reopening of voir dire for the purpose of questioning the jury panel on the issue of insurance, counsel was, in effect, asking permission to isolate the "insurance question" during a separate segment of voir dire. Clearly, the segregation of this question would have unduly highlighted it—even more so than placing it last in a series of questions. Such an approach would have been in contravention of Missouri's three-step process.

Although Mr. McGoldrick argues on appeal that he could have also asked "several other questions" once voir dire was reopened, he did not call this option to the attention of the trial court. "A point not raised in the trial court may not be raised on appeal, and a party cannot request relief on appeal not sought in the trial court." *Bunting v. McDonnell Aircraft Corporation,* 522 S.W.2d 161, 168 (Mo. banc 1975). Regardless, it is not unreasonable to conclude that Mr. McGoldrick's strategy of asking several questions would still place undue emphasis on the issue of insurance.

The trial court offered counsel reasonable opportunity to inquire as to the panel's insurance connections. Counsel failed to seize that opportunity and therefore waived the right to ask the "insurance question." A new trial is only required upon the denial of "the right to ask a *proper* 'insurance question.'" *See Ivy,* 878 S.W.2d at 445 (emphasis added). The proposed question in Mr. McGoldrick's case was not proper, due to its untimeliness. The trial court did not err, and the point is denied.

## II.

Mr. McGoldrick's second and final point on appeal concerns the assertion that the trial court erred in denying Mr. McGoldrick's motion for mistrial following the discovery of three errors in jury instructions given. Mr. McGoldrick claims that the jury panel was

overwhelmed and confused by the errors, and that the confusion led to a compromise verdict. Specifically, he points to alleged flaws in Verdict Forms A and B, as well as in Instruction No. 17.[2] Verdict Forms A and B mistakenly asked the jury to total the percentages of fault of the drivers in a sum of "zero to 100%," when the forms should have read "zero <u>OR</u> 100%." Comparative fault Instruction No. 17, on the other hand, apparently switched the name of Mr. Buckallew for that of Mr. McGoldrick, though the record does not establish the exact nature of the alleged error, since Mr. McGoldrick failed to submit the faulty version of Instruction No. 17 in the appellate record.[3]

■ "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented...." Rule 81.12(a). *See also Stegan v. H.W. Freeman Const. Co., Inc.,* 637 S.W.2d 794, 798 (Mo.App.1982). It is arduous, if not impossible, for a court to determine whether prejudice arose from a contested instruction which is not included in the record. "An appealing party desiring review of an issue has the duty to furnish all records relating thereto, and in the absence of such there is nothing for review."[4] *Keesee v. Meadow Heights R–II School Dist.,* 865 S.W.2d 818, 824 (Mo.App.1993).

■ Although it is noted that Mr. McGoldrick failed to fully set forth any of the challenged instructions in his brief pursuant to Rule 84.04(e), the record does provide evidence as to both versions of Verdict Forms A and B. This court elects to review the claimed error relating to Verdict Forms

A and B and finds no reversible error. "Mistrials are a most drastic remedy and should be reserved for the most grievous error where prejudice cannot otherwise be removed." *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208 (Mo. banc 1991). The trial court has the authority to determine, in its sound discretion, whether to grant a mistrial. *Id.*

■ Mr. McGoldrick argues that the court's efforts to correct Verdict Forms A and B did not remove prejudice to him because the emendations came too late, after the jury was already confused. This court disagrees. "[A] trial court may correct an erroneous instruction anytime before [the] verdict." *Kasper v. Helfrich,* 421 S.W.2d 66, 71 (Mo.App.1967). Although remedial action does not conclusively eliminate any prejudice, *Bast v. St. Louis Freightliner, Inc.,* 676 S.W.2d 42, 44 (Mo.App.1984), the trial court is in a better position to determine whether the prejudice was so great that a mistrial is necessary. *See State v. El Dorado Management Corp., Inc.,* 801 S.W.2d 401, 411 (Mo.App.1990) (quoting *State v. Anderson,* 698 S.W.2d 849, 852–53 (Mo. banc 1985)). *See also Wells v. Wilson,* 293 S.W. 127, 129 (Mo.1927) (finding that no one is in better position than the trial judge to determine whether an instructional error is fully cured by trial court action). The facts of the case at hand make it clear that the trial court did not err in denying a mistrial, since the instructional flaws constituted harmless error.

■ To determine whether a jury is misdirected by instructions, the reviewing

---

2. The record on appeal does not show an objection to the errors in Verdict Forms A and B or in Instruction No. 17 before the jury began its deliberations. According to Rule 70.03, "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Because Mr. McGoldrick complains of errors in the correction of mistakes in the instructions rather than the giving of the instructions themselves, however, this court will further address Mr. McGoldrick's claim.

3. Although the corrected version of Instruction No. 17 has been submitted in the record, the

transcript provides insufficient means by which to conclusively establish how the corrected rendition differs from the original.

4. Despite the failure to include the erroneous Instruction No. 17 in the record, it can still be established that the instruction did not prejudice Mr. McGoldrick. When a jury assigns no fault to the defendant in a comparative fault case, there is no prejudice in an erroneous comparative fault instruction. *Wilson v. Shanks,* 785 S.W.2d 282, 285 (Mo. banc 1990); *Vasseghi v. McNutt,* 811 S.W.2d 453, 455 (Mo.App.1991). The jury apportioned no fault to either driver in Mr. McGoldrick's case, rendering the alleged error in Instruction No. 17 inconsequential.

**710**

court must consider the entire set of instructions as a whole. *Ahrens & McCarron, Inc. v. Mullenix Corp.*, 793 S.W.2d 534, 541 (Mo. App.1990). Typographical or inadvertent errors are not necessarily prejudicial when a literate juror could conclude what the instructions were intended to communicate. *See Goff v. St. Luke's Hosp. of Kansas City*, 753 S.W.2d 557, 564 (Mo. banc 1988).

▆▆▆▆ In Mr. McGoldrick's situation, the only alleged error in Verdict Forms A and B was the use of the word "to" in the "total" line, as opposed to the word "OR." Reading the instructions as a whole, a literate juror would easily conclude that the incongruity between the "total" lines of Verdict Forms A and B and the "total" line of Verdict Form C signified a typographical error. Indeed, the jury in Mr. McGoldrick's case was plainly aware of the discrepancy between the verdict forms, since it questioned the court as to the differences between Verdict Forms A and B and Verdict Form C. Because it requested and received clarification, the jury could not have been ultimately misdirected. It is presumed that a jury accepts and acts upon an instructional correction unless the circumstances of the case suggest otherwise. *Wells*, 293 S.W. at 128.

In his brief, Mr. McGoldrick claims that deviations from MAI result in a presumption of prejudice. Although this statement is generally true, *Kunzler v. Estate of Kunzler*, 598 S.W.2d 139, 142 (Mo. banc 1980), such a rule is primarily directed at deliberate attempts to deviate from or to "improve" MAI instructions. *See Goff*, 753 S.W.2d at 564–65.[5] In the case at hand, the deviations appear to consist only of inadvertent or typographical errors which do not affect the merits of the action to a material extent—especially since the verdict forms were corrected. *See id.*; Rule 84.13(b). The prejudicial effect

of an erroneous instruction is judicially determined. Rule 70.02(c). Any prejudice which may have arisen against Mr. McGoldrick was cured when the court corrected Verdict Forms A and B.

The trial court did not abuse its discretion in overruling Mr. McGoldrick's motion for a mistrial. Point denied.

The judgment of the trial court is affirmed.

All concur.

---

5. *But see Bast*, 676 S.W.2d 42. In *Bast*, the trial court granted a new trial because the jury was given a punitive damages instruction when punitive damages were not at issue. Although the erroneous instruction was withdrawn, the jury returned what the judge believed to be an excessive verdict. The judge therefore found that the error was confusing and misleading and, on review, the appellate court upheld the order granting a new trial. *Id.* at 44.

*Bast* is distinguishable from the situation at hand, however, since it involved more extreme circumstances. There is a great difference between submitting an entire instruction for inappropriate damages and mistyping one word in an otherwise correct instruction. Clearly, the potential for prejudice is much more likely in the former situation. In the *Bast* scenario, remedial action was therefore less likely to rectify prejudice than the corrective action taken in Mr. McGoldrick's case.