Dale NIXON and Dorothy Nixon, Plaintiffs–Respondents,

v.

James GREENLEE and Carol Greenlee, Defendants–Appellants.

No. 20759.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 23, 1996.

L. Thomas Elliston, Webb City, for defendents–appellants.

John Sims, Sims, Johnson, Wood & Higdon, Neosho, for plaintiffs–respondents.

PARRISH, Judge.

James E. Greenlee and Carol J. Greenlee (defendants) appeal a judgment entered against them in an action Dale Nixon and Dorothy Nixon (plaintiffs) brought for fraudulent misrepresentation. Plaintiffs' misrepresentation claim was Count II of a three-count petition. Count I was an action for breach of contract. Count III sought punitive damages based on the action for fraudulent misrepresentation. The trial court dismissed Count I at the close of all the evidence and found in favor of defendants on Count III. This court reverses and remands with directions with respect to Count II and affirms as to Counts I and III.

■ The trial court heard this case without a jury. This court's review is undertaken pursuant to Rule 73.01(c). It is limited to determining whether there is substantial evidence to support the judgment, whether the judgment is against the weight of the evidence, or whether it is the result of an erroneous declaration or application of law. *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo.App.1990).

Defendants present two points on appeal. Point I asserts the trial court erred in entering judgment in Count II in favor of plaintiffs because plaintiffs failed to prove that defendants' representation that water in a well located on premises defendants sold to plaintiffs did not meet minimum standards for consumption at the time of the sale closing. Point II alleges the trial court erred by applying an incorrect measure of damages in plaintiffs' claim for misrepresentation.

Plaintiffs purchased real estate from defendants. There was a house and well on the property. The real estate sales contract included:

The Seller warrants that at the time of closing, all plumbing, heating, air conditioning, electrical, sewer and septic systems, and all appliances being sold with the property are in normal working order and the water well meets minimum standards for human consumption as determined by the County Health Department. Buyers shall have the right to obtain a written inspection by a competent professional of the roof and structural condition of the property, as well as the above mentioned items.

The contract provided that any of the items mentioned in the above-quoted contract provision "not acceptable to the Buyer shall be reported in writing to the Seller through the Listing Broker, along with a copy of the applicable Inspection report." It provided that if the buyer obtained a report noting a deficiency and submitted it to the seller, "the Seller shall advise in writing whether or not the Seller is willing to correct such defects prior to closing." If the seller was not willing to correct a defect, the contract permitted the buyer to either waive the requirements and close the sale or terminate the contract. The contract stated, "If after inspection, the Buyer does not report any requirements, the Buyer shall be deemed to have accepted the property in its condition on the date of the contract and the Seller shall deliver possession of the property in substantially the same condition as on the contract date."

Plaintiffs' and defendants' contract was dated July 22, 1995. The closing was originally scheduled for July 27, 1995. A test of a water sample from the well was conducted July 24, 1995. Sharon Vernon, who testified that she was the listing agent, told the trial court that she called defendants and told them, "We have a bad well test, and we will need to treat the well. And I have information from the Health Department regarding that."

The well was treated after the July 24 test by Bobby J. Letts. Mr. Letts was in the water pump business and well drilling business. He had been in those businesses 28 years. He put a gallon of chlorine in the well. Two tests were performed on the well after it was chlorinated, on July 30, 1995, and August 1, 1995. They produced satisfactory results.

At the time of the real estate closing Mr. Nixon received copies of the laboratory reports from the July 30 and August 1 tests of the well. He signed statements on copies of the reports that said, "I acknowledge receipt of a copy of this document and hereby approve same."

Dale Nixon testified that he had not had the well tested before the closing.[1] He was aware, however, that an unsatisfactory test had been performed. The closing had been postponed for several days because of it. He testified that he went ahead with the closing August 3, 1995, "[b]ecause they presented two good tests that the well was good—the water was good."

After the closing, Mr. Nixon requested Rayma Broadway, an environmental sanitarian employed by the Newton County Health Department, to sample and test the water. Ms. Broadway took a sample of the water August 15, 1995. She testified, "The nitrates came out satisfactory, but the bacteriological came out with 21 coliforms, unsatisfactory." Eventually, Mr. Nixon had a new well drilled and used it for his water supply.

Ms. Broadway testified that the treatment her agency used on wells with unsatisfactory test results was to pour in "some type of calcium hypochlorox—hypochlorite down, which could be Clorox or Super Socket or any number of things." She testified that this would be poured into the well at the well head. It would be followed by two tests of the well. The procedure her agency would have followed would have been to perform the follow-up tests a week apart. She was asked if the well could have been used for human consumption under the standards of her agency on August 3. She testified that this would be speculation on her part; that she could not say without having results of a test performed by her own agency.

---

1. The record on appeal does not reveal who caused the July 24 test to be performed. No written report of the test results was admitted in evidence.

Defendants' first point on appeal is directed to the elements required to prove fraudulent misrepresentation. Defendants contend the trial court erred in entering judgment for plaintiffs on Count II of the petition, the misrepresentation claim, because the judgment was not supported by the evidence. They argue that the trial court erroneously applied the law in entering the judgment because there was no proof that the water well did not meet minimum human standards at the time of the real estate closing.

 In order to make a submissible case for fraudulent misrepresentation there must be proof of each element of the cause of action. *Yerington v. Riss,* 374 S.W.2d 52, 57 (Mo.1964).

The elements of a claim of fraudulent misrepresentation are: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of the truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Dierker Associates v. Gillis,* 859 S.W.2d 737, 746–47[22] (Mo.App. E.D.1993). A failure to establish any one of these elements with substantial evidence is fatal to recovery. *Scott [v. Car City Motor Co., Inc.],* 847 S.W.2d [861] at 864 [Mo.App.W.D.1992].

*Thoroughbred Ford, Inc. v. Ford Motor Co.,* 908 S.W.2d 719, 731 (Mo.App.1995).

The representation that plaintiffs contend was falsely made was the provision of the real estate sales contract warranting the condition of the water well at the time of the sale closing.[2] Plaintiffs base their claim that the representation was false on the July 24 test results and results from a test performed after the closing. There was no evidence concerning the condition of the well on the date of closing.

Ms. Broadway, the environmental sanitarian who took the August 15 water sample, testified that the same well may test unsatisfactory and satisfactory on different occasions; that many factors can affect how a well tests at any given time. She said the test results she obtained were "just good for that day at that time."

Plaintiffs' response to defendants' claim of error notes that "[f]raud may be inferred from facts and circumstances and need not be shown by direct evidence." *See Rogers v. Hickerson,* 716 S.W.2d 439, 446 (Mo.App. 1986). Plaintiffs suggest that the well was represented as being usable for human consumption; that defendants' acts of causing the well to be treated after an unsatisfactory test of the well water had been obtained and then presenting them with "two good tests" is a basis for refuting defendants' claim of error. They urge this court to hold that the contract warranty of the well's fitness required that the water "be fit for human consumption and not for only the seconds that transpired at closing."

 Plaintiffs' fraudulent misrepresentation claim, Count II of their petition, states the alleged fraudulent misrepresentation was "the warranty with respect to the well contained in [the] contract and further statements that were made by the Defendants that the well was good at the time of closing." Plaintiffs' suggestion that the contract language was intended to mean something else raises matters on appeal that were not presented at trial. Parties are not entitled to present theories on appeal different from those upon which a case was tried. *Bowden v. Dept. of Social Services,* 903 S.W.2d 577, 580 (Mo.App.1995); *Kiener v. Powell,* 865 S.W.2d 864, 867 (Mo.App.1993).

 Plaintiffs, as the parties charging fraud, had the burden of proving the representation in the contract was false. *Cave v.*

---

2. The parties do not question whether the representation in their contract concerning the quality of the well water was a representation sufficient to support a tort action for fraudulent misrepresentation. Defendants challenge only the finding that there was sufficient evidence to find the representation was false. In disposing of the appeal, this court addresses only that issue. It was not asked to determine whether the promise in the contract was accompanied by a present intent not to perform and, therefore, has not done so.

*Cave,* 593 S.W.2d 592, 596 (Mo.App.1979). They failed to present evidence as to the condition of the well on the date of closing. Defendants followed advice they were given concerning proper methods of treating a well following an unsatisfactory test. They had the well tested again by a state-licensed laboratory and provided those test results to plaintiffs at closing. Plaintiffs accepted the tests by acknowledging their receipt and expressly approving them. "A plaintiff fails to make out a case of fraud when the facts and circumstances presented are as consistent with honesty and good faith as they are with fraud." *Martin v. Brune,* 631 S.W.2d 77, 81 (Mo.App.1982).

There was no substantial evidence that the representation about which plaintiffs complained was false. The trial court's finding to the contrary was erroneous. Its award of judgment on Count II in favor of plaintiffs was a misapplication of law. Defendants' first point on appeal is granted. The judgment as to Count II must be reversed.

Defendants' second point is directed to the measure of damages awarded on Count II. It is moot by reason of granting defendants' first point on appeal.

The judgment is affirmed as to Counts I and III. It is reversed as to Count II and the case remanded with directions to enter judgment thereon in favor of defendants.

MONTGOMERY, C.J., and CROW, P.J., concur.