**Carolyn M. VINTILA, Respondent,**

v.

**Dennis L. DRASSEN, A & G Trucking, and Amega Home Sales, Inc., Appellants.**

**No. 23361.**

Missouri Court of Appeals, Southern District, Division One.

June 27, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied July 19, 2001.

Application for Transfer Denied Aug. 21, 2001.

Thomas J. Noonan, Stephen J. Barber, St. Louis, for Appellant.

Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, IN, John L. Oliver, Jr., Oliver, Oliver & Waltz, P.C., Cape Girardeau, for Respondent.

MONTGOMERY, Judge.

This case involves a personal injury claim by Carolyn M. Vintila (Respondent) against Dennis L. Drassen, A & G Trucking, and Amega Mobile Home Sales, Inc. (Appellants) stemming from an automobile accident. After the car in which Respondent was a passenger collided with a truck driven by Drassen, Respondent filed suit against Appellants. A jury found in favor

of Respondent and assessed $1.5 million in damages against Appellants. This appeal followed.

Appellants raise eight points on appeal. Several points challenge the sufficiency of the evidence in support of the judgment; therefore a detailed rendition of the evidence presented at trial is necessary. In accordance with our standard of review, the factual summary is presented in the light most favorable to Respondent, the prevailing party at trial. *See Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 85 (Mo.App.2000).

A & G and Amega hired Drassen to drive a truck transporting a 14–foot–wide, half-section of a mobile home from Alabama to Neosho, Missouri. Although Missouri law prohibits the operation of a vehicle with a width in excess of 96 inches (8 feet) upon the highways, the Missouri Department of Transportation authorized Drassen to transport the mobile home under the terms of a special permit for overwide loads. The permit provided, in pertinent part, that Drassen could not be move the oversized load between the hours of 4:00 p.m. and 6:00 p.m. and that he must maintain a distance of a least 1,000 feet between oversized loads. The permit also provided that, if necessary, traffic should be stopped at bridge crossings.

October 13, 1995, Drassen was transporting the mobile home section westbound on Highway 60, a two-lane road in Carter County, Missouri. Two escort vehicles and a second truck, which was hauling the other half-section of the mobile home, accompanied Drassen. The escort vehicles bore signs reading "Oversized Load" on the top and back, drove with the headlights on and had flashing lights and flags on the back. The group traveled together in a caravan. One escort vehicle was leading the way. Next came the truck operated by the other driver, followed by a second escort vehicle. The truck operated by Drassen was the last in the procession.

At approximately 5:30 p.m., the caravan approached the Carter Creek Bridge, a two-lane bridge on Highway 60. The bridge is 159 feet long and 27 feet 7 inches wide from wall to wall. The roadway is 23 feet 4 inches wide, with each lane being approximately 12 feet across.

The caravan's usual practice when crossing a bridge was for the escorts to go ahead of the trucks to make sure the bridge was clear and to attempt to stop as many other vehicles as possible. The escorts would use CB radios to communicate with the drivers of the trucks and warn them about oncoming vehicles. When oncoming traffic was already coming across the bridge, the escorts would inform the truck drivers so that they could slow down and stop until the traffic passed.

On the day of the accident, the caravan continued across the bridge in the order in which they had been traveling. They shortened the distance between the vehicles to approximately 330 feet in order to drive across the bridge more quickly. The 14–foot wide sections of the mobile home were so wide in relation to the two-lane bridge that they had to be driven down the middle of the bridge, straddling the center line.

The lead escort saw a vehicle approach the bridge and come to stop as far to the side of the road as possible. The escort advised the others that the vehicle was letting them pass and kept going. The escort made no attempt to flag down other vehicles or stop traffic in order for the oversized loads to cross the bridge.

Once across the bridge, the lead escort noticed a pickup truck moving eastbound toward the bridge. Theodore Vintila, Respondent's husband, was driving the oncoming pickup truck, with Respondent in

the front passenger seat. The lead escort radioed to the other drivers that the pickup truck was coming. The pickup truck passed the lead escort vehicle, the first truck and the second escort vehicle after they had already crossed the bridge.

Drassen's vehicle was still approximately 25 feet from the bridge when he saw the pickup coming toward him. When Drassen first saw the pickup truck, its brakes were locked up, smoke was coming from its tires, and it was sliding within its eastbound lane. Drassen testified he believed he could still get across the bridge as long as the pickup stayed within its own lane. Drassen continued forward. The driver of the pickup appeared to let off of the brakes and then hit them again. As Drassen exited the bridge, the pickup truck skidded into Drassen's lane of traffic and the vehicles collided. Theodore Vintila died as a result of his injuries from the collision, and Respondent sustained multiple injuries.

Following the collision, Trooper David Martin of the Missouri Highway Patrol arrived at the scene. The pickup truck driven by Vintila was in the eastbound lane facing west. Trooper Martin determined that the pickup left two sets of skidmarks and took measurements at the scene. The first skidmarks were 104 feet long. The area immediately after the initial skid was devoid of any marks. Then came another 33 feet of skidmarks that went from the eastbound lane into the westbound lane. Drassen's truck left 41 feet of skidmarks.

On August 22, 1996, Respondent filed a petition against Appellants alleging that Drassen was an agent of A & G and Amega and that his negligence was the proximate cause of the collision and resulting injuries. Respondent alleged several acts of negligence on the part of Drassen including, but not limited to, failing to stop when he should have known there was a reasonable likelihood of a collision, driving an overwidth [sic] vehicle on a road at a time not permitted by law, and failing to maintain a proper distance between vehicles. Respondent also made a claim against her husband's estate and his insurance company. She settled this separate claim for $25,000.

On July 28, 1999, a jury trial was held on the matter. At trial, William Hampton, an accident reconstructionist, testified on Respondent's behalf. Hampton testified he was familiar with Missouri regulations relating to the movement of overweight and overdimension vehicles. He also stated he was familiar with the special permits required for such vehicles. Hampton testified that he relied on the regulations when analyzing the case.

Hampton testified that prohibition against oversized vehicles traveling the roads between 4:00 and 6:00 p.m. was designed to promote safety. The regulation prevents oversized vehicles from crowding the road during times of increased traffic. Hampton testified that based upon his experience as a state trooper he was aware that during the curfew times there was increased traffic on Carter Creek Bridge. He also noted that the restriction alleviates visibility problems for drivers due to sunset. Hampton suggested there was "some possibilities" that the position of the sun played a part in the accident based upon testimony of the driver behind Drassen that the sun was "really in her eyes" and that "she could not see what she was coming up on."

Hampton then testified concerning the requirement that oversized vehicles maintain a distance of 1000 feet when traveling together. Hampton stated that the regulation was designed to promote safety by enabling traffic to easily pass the oversized vehicles. The distance also provides more reaction time and visibility than if the

oversized vehicles were closer together. Hampton concluded that a distance of only 330 feet separated the two oversized vehicles in the convoy.

Based upon Drassen's deposition testimony, Hampton calculated that when Drassen saw Vintila's vehicle begin to skid, he had 240 feet before the point of impact. Based upon a speed of 30 miles per hour, the speed Drassen said he was driving in deposition testimony, and utilizing the standard reaction time, Hampton opined that Drassen had time to stop if he had chosen to do so. Hampton further concluded that Drassen had time to stop prior to impact even if his vehicle had been traveling at 45 miles per hour.

According to his testimony, Drassen recognized that his permit prohibited transportation of the 14–foot wide section of the mobile home between the hours of 4:00 and 6:00 p.m. He testified, however, that he would occasionally violate the curfew. Drassen was also aware that the permit required a 1,000 foot distance between oversized loads. He testified that he had violated this condition "many times."

After hearing the evidence, the jury returned a verdict in favor of Respondent and assessed damages at $1.5 million. This appeal followed.

In their first point relied on, Appellants claim the trial court erred in submitting Instruction Number 6, the verdict director, because it was based upon an erroneous standard of care and allowed the jury to assess liability on improper grounds. Specifically, Appellants contend Instruction Number 6 was incorrectly based upon the requirements of 7 C.S.R. 10–2.010, the oversized vehicle permit regulation, rather than § 304.170.1,[1] the statute prohibiting the operation of vehicles more than 96 inches in width.

■■■ "In reviewing the submissiblity of an instruction, an appellate court views the evidence and reasonable inferences in the light most favorable to the instruction and disregards all contrary evidence." *Deckard v. O'Reilly Automotive, Inc.,* 31 S.W.3d 6, 18 (Mo.App.2000). For instructional error to rise to the level of reversible error there must be a showing of prejudice. *Rains v. Herrell,* 950 S.W.2d 585, 588 (Mo.App.1997). Such error exists only if the merits of the case were affected by the erroneous instruction. *Id.* This court will reverse a jury verdict on the grounds of instructional error only if the instruction in question misdirected, misled, or confused the jury. *Id.*

In the instant case, Instruction Number 6 provided:

Your verdict must be for [Respondent], Carolyn Vintila, against [Appellants], A & G trucking, Amega Mobile Home Sales, Inc., and Dennis Drassen if you believe:

First, either:

[Appellants] hauled a 14 foot wide load on the two-lane highway of less than 28 feet between the hours of 4:00 p.m. and 6:00 p.m., or,

[Appellants] failed to stop traffic on the two lane highway, when necessary, where the bridge width is less than 28 feet, before crossing the bridge, or,

[Appellants] failed to maintain a distance of at least 1000 feet between oversized loads, or,

[Appellants'] driver knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, but [Appellants'] driver failed to do so, and,

1. Statutory references are to RSMo 1996 unless otherwise noted.

Second,

[Appellants] were thereby negligent, and

Third,

Such negligence directly caused or contributed to cause damage to [Respondent][.]

Appellants argue this language reflects the requirements of the oversized load permit, thereby setting forth an inappropriate standard of care in a negligence action based upon the operation of an oversized vehicle. They contend the verdict director should have been restricted to include only the terms of § 304.170.1, a blanket prohibition against loads in excess of 96 inches.

Section 304.170.1 prohibits the operation of any vehicle on Missouri highways with a width exceeding 96 inches. However, § 304.200.1 provides that, for good cause shown and when the public safety or public interest so justifies, the chief engineer of the Missouri Department of Transportation may issue special permits for vehicles exceeding the width restriction of § 304.170.1. Section 304.200.3 further authorizes the Missouri State Highway and Transportation Commission to prescribe the rules and regulations for the issuance of such special permits.

The applicable regulations governing the special permits authorized under § 304.200 are contained in 7 C.S.R. 10–2.010. Drassen's special permit was issued pursuant to these regulations. The permit included provisions that excluded movement from 4:00 p.m. to 6:00 p.m. on all two-way traffic routes and required the permittee to "properly warn traffic, adjust speed and if necessary, stop traffic when crossing bridges where the load exceeds one-half the roadway width of the bridge."

Appellants rely solely on *King v. Morgan*, 873 S.W.2d 272 (Mo.App.1994), for their proposition that the restriction against all loads over 96 inches in length in § 304.170.1 established the appropriate standard of care for the purposes of the jury instruction in this negligence case. In *King*, the plaintiff was injured when standing on the shoulder of a highway doing surveying work. *Id.* at 274. The defendant was driving a tractor-trailer carrying an overwide load. *Id.* When the tractor-trailer passed the plaintiff, the overwide portion of the load extended into the shoulder of the road and struck the plaintiff, resulting in extensive injuries. *Id.*

Plaintiff filed a petition against the defendant alleging negligence. At trial, the trial court refused two jury instructions submitted by the plaintiff alleging negligence per se as a basis for recovery. *Id.* at 275. Eventually the trial court submitted the plaintiff's claim on a theory of ordinary or common law negligence and the jury returned a verdict in favor of the defendant. *King*, 873 S.W.2d at 275.

On appeal, the plaintiff maintained the trial court erred in failing to submit either of his proffered instructions based upon the defendant's negligence per se in violating § 304.170.1. *Id.* The defendant attempted to use the fact that he had been issued a special permit pursuant to § 304.200 to support his contention that he could not be held negligent per se for violating the general prohibition against operating an oversized vehicle. *Id.* at 277. The court of appeals determined the defendant failed to comply with the terms of the permit, thereby rendering it void. *Id.* The court concluded that because the permit was void at the time of the accident, the plaintiff made a submissible case that defendant had violated § 304.170.1 and the trial court erred in failing to instruct on negligence per se. *Id.*

*King* provides Appellants no support for their theory that the trial court erred in

submitting an instruction based upon the permit requirements. The *King* court did not address the issue at hand, specifically, whether violations of the permit regulations could be used in instructing the jury on acts or omissions that could be found negligent. Rather, *King* involved a claim of negligence per se based upon a statutory violation.

In *King*, the trial court submitted instructions based upon a more demanding common law negligence standard, and the court of appeals determined the permit violations that rendered the permit void made it appropriate to give an instruction based upon the less exacting standard of negligence per se for violating § 304.170.1. Under a negligence per se instruction, the plaintiff could recover if the jury merely found that the defendant violated § 304.170.1 by operating a vehicle that exceeded 96 inches in width and that violation was the proximate cause of the plaintiff's resulting injuries.

■ Based upon this case, Appellants contend that if they violated the terms of their special permit as Respondent alleged, the permit was void and the prohibition against any vehicle exceeding a width of 96 inches was the applicable standard of care. According to Appellants' reasoning, their admitted violations of the permit restrictions against driving during the curfew hours and allowing less than 1000 feet between vehicles would have rendered the permit void, thereby subjecting them to a negligence per se instruction for their violation of § 304.170.1. Under such an instruction, Respondent would have only been required to show that Appellants operated a vehicle exceeding 96 inches in width upon Missouri highways in violation of the statute and Respondent's injuries were proximately caused by that violation. Under Appellants' theory, Respondent would have had a lower burden of proof than she did under the general negligence theory submitted to the jury. The jury would no longer have to make the threshold inquiry as to whether the evidence showed Appellants were negligent by violating each of the individual permit requirements before determining if such negligence was the proximate cause of the injuries. Instead, if the instruction were based upon the theory of negligence per se, the jury would begin their inquiry with the question of proximate cause. We are hard pressed to determine how Appellants were prejudiced by the trial court's failure to submit the more lenient standard set forth in *King* over the more demanding standard actually used.

■ Furthermore, Missouri courts have often held that regulations such as those promulgated by 7 C.S.R. 10–2.010 establish the appropriate standard of care in a negligence case. *See Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 821 (Mo. banc 2000) (determining OSHA regulations were competent evidence of standard of care); *Millard v. Corrado*, 14 S.W.3d 42, 50 (Mo.App.1999) (holding that doctor's failure to respond to calls within time prescribed by regulation was evidence of negligence); *Schneider v. Union Elec. Co.*, 805 S.W.2d 222, 229 (Mo.App.1991) (finding that OSHA regulation as evidence of standard of care was appropriate in common law negligence case). "[A] violation of the substance of pertinent rules may be hypothesized as evidence supporting a finding of negligence." *Giddens*, 29 S.W.3d at 821.

We are not convinced that the instruction based upon the permit regulation was erroneous. In addition, Appellants make no showing of prejudice. Therefore, we find no error in submitting the Instruction Number 6. Point I is denied.

In their second point, Appellants contend the trial court erred in denying their motions for directed verdict, judgment notwithstanding the verdict, and for a new trial because Respondent failed to make a submissible case that Drassen's operation of the oversized vehicle in violation of § 304.170 caused or contributed to cause her injuries. Appellants maintain that because the Vintila vehicle collided with the front of the truck rather than the oversized portion of the load, the injuries sustained by Respondent were not the kind the statute was designed to prevent and the size of the load did not contribute to cause such injuries.

Appeals from the trial court's denial of motions for directed verdicts and judgment not withstanding the evidence are treated in the same manner. *Agri-Bank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 256, 258 (Mo.App.1996). The primary inquiry is whether the plaintiff made a submissible case, viewing all evidence in the light most favorable to the prevailing party. *Id.* at 259. If one or more elements of a cause of action are not supported by substantial evidence, the trial court should grant a motion for directed verdict and for judgment notwithstanding the verdict. *Id.*

An appellate court reviews the denial of a motion for a new trial for abuse of discretion. *City of Pleasant Valley v. Baker*, 991 S.W.2d 725, 727 (Mo.App.1999). An abuse of discretion is evident when "reasonable persons could not differ as to the propriety of the action taken by the trial court." *Id.*

Point II is erroneously premised upon the notion that the case was submitted to the jury on a theory of negligence per se based upon a violation of § 304.170.1. As already noted in our earlier discussion, the case was actually submitted upon a general negligence theory based upon Appellants' violation of the curfew, failure to stop traffic, failure to maintain a distance of 1000 feet between loads, and failure to stop prior to the collision. Accordingly, liability based upon a violation of § 304.170.1 was not before the jury. Parties are not entitled to present theories on appeal different from those upon which a case was tried. *Nixon v. Greenlee*, 928 S.W.2d 917, 920 (Mo.App. 1996). Point II is denied.

In Point III, Appellants allege the trial court erred in allowing the admission into evidence of the permit and the regulations because they were irrelevant. Appellants again contend the regulations were not intended to prevent the accident at hand, and any violations of such regulations did not cause or contribute to cause the accident.

The argument in support of this point is inadequate. It consists of three short paragraphs that make no attempt to explain the issues raised. Instead, Appellants maintain the arguments in support of the point are "set forth in full" in Point I and Point IV. Appellants offer no additional support and fail to cite a single case supporting this point. Under Rule 84.04(d)(5),[2] "[f]ailure to cite relevant authority supporting the point or to explain the failure to do so preserves nothing for review." *Kent v. Charlie Chicken, II, Inc.*, 972 S.W.2d 513, 516 (Mo.App.1998). Point III is denied.

Appellants next contend, in Point IV, that the trial court erred in denying their motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial because Respondent failed to make a submissible case based upon Appellants'

---

2. Unless otherwise noted, rule references are to Missouri Court Rules (2001).

alleged violations of the permit or applicable regulations. Appellants assert they could not be found negligent for violating the curfew and failing to maintain the required 1000-foot distance between vehicles because these requirements were not intended to prevent the collision at issue and any such violations were not the proximate cause of Respondent's injuries.

As already noted, in determining whether a plaintiff has made a submissible case on a disputed factual issue, the evidence is viewed in the light most favorable to the submission. *AgriBank*, 919 S.W.2d at 259. When the evidence is viewed in this light, Appellants' argument fails.

■ First, Appellants argue the regulations were not intended to prevent the collision at issue. Appellants concede that the "clear purpose" of the restriction against movement between 4:00 p.m. and 6:00 p.m. "was to keep oversized loads off the road during the rush hours … when there usually are an increased number of persons on the road…." However, they argue there was no evidence at trial that there was an increase in traffic at the Carter Creek Bridge during these hours.

Appellants completely ignore Hampton's testimony that, based upon his experience as a trooper in the area, there was an increase of traffic on the bridge during the restricted hours. It is the duty of the trier of fact to make credibility judgments and the jury was entitled to believe Hampton's testimony. *Ken Cucchi Const., Inc. v. O'Keefe*, 973 S.W.2d 520, 524 (Mo.App. 1998). Hampton's testimony provided sufficient evidence that the curfew was designed to prevent an accident, such as the one at hand, on a narrow roadway during a time of increased traffic.

■ Next, Appellants argue the regulation requiring them to maintain 1000 feet between oversized loads was not intended to prevent front-end collisions with oncoming vehicles, such as the one in this case. They maintain the spacing requirement was merely intended to protect traffic traveling in the same lane by allowing more room in which to pass between loads or to prevent an overwide load from colliding with a vehicle driving in front of it.

Again, Appellants ignore Hampton's testimony that one reason for the regulation is visibility or to allow other drivers to see the overwide load while there is still adequate time to react. It is nonsensical to suggest the regulation was not in some way intended to provide reaction time to drivers who find themselves faced with oncoming vehicles carrying overwide loads. We cannot say the regulations were not intended to prevent the collision at issue.

■ Appellants continue their argument by maintaining that in any event, violations of the regulations did not proximately cause Respondent's injuries. " 'Proximate cause is not causation in fact, but is a limitation the law imposes upon the right to recover for the consequences of the negligent act.' " *Robinson v. State Highway & Trans. Comm'n*, 24 S.W.3d 67, 77 (Mo.App.2000) (quoting *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 475 (Mo.App.1997)).

■ "In determining what constitutes the proximate cause of an injury, the same principles apply whether the alleged negligence is violation of statutory duty or violation of a duty imposed under general principles of law." *King*, 873 S.W.2d at 278. " 'The simplest test for proximate cause is whether the facts show that the injury would not have occurred in the absence of the negligent act.' " *Id.* (quoting *Martin v. City of Washington*, 848 S.W.2d 487, 493 (Mo.banc 1993)). We must look at the collision with hindsight and determine

whether Respondent's injuries appear to be a reasonable and probable consequence of Appellants' violation of the regulations. *Robinson*, 24 S.W.3d at 78.

To find proximate cause, it is only necessary that Appellants knew or should have known that there was an appreciable chance some injury would result from their actions. *Robinson*, 24 S.W.3d at 78. Furthermore, Appellants' negligence need not be the only cause of the injury; it must be one of the causes without which the injury would not have occurred. *Id.*

The evidence at trial showed that the collision occurred on a narrow bridge with no room for an oversized load and a passenger car to pass safely at the same time. The collision occurred during the hours when there was a risk of increased traffic on the bridge. Drassen did not leave the prescribed amount of space between his vehicle and the other load, leaving an oncoming driver little reaction time between first seeing the oncoming overwide load and meeting up with it. Drassen should have known there was an appreciable chance some injury would result from this set of circumstances. The collision and the resulting injuries to Respondent were the reasonable and probable consequence of these actions. There was sufficient evidence to find Appellants' violations of the regulations were the proximate cause of the collision and injuries.

Respondent made a submissible negligence case based upon this evidence. The trial court did not err in failing to grant Appellants' motions for directed verdict, judgment notwithstanding the verdict, and a new trial. Point IV is denied.

Appellants' Point V states that the trial court erred in denying their motions for directed verdict, judgment notwithstanding the verdict, and for a new trial,

and in submitting, as a disjunctive element of Respondent's negligence claim, that Drassen knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision with the Vintila vehicle in time to stop before the vehicles met. Appellants suggest that even when viewing the evidence in the light most favorable to Respondent, there was no evidence that Drassen had sufficient time in which to bring his truck to a stop before colliding with the other vehicle.

There must be sufficient evidence to support an issue submitted by an instruction. *Hollis v. Blevins*, 927 S.W.2d 558, 564 (Mo.App.1996). Every element of a verdict director must be supported by substantial evidence. *Id.* "Appellate review of the sufficiency of the evidence to support the giving of the instruction is made in the light most favorable to its submission, and if the instruction is supportable by any theory, its submission is proper." *Id.* The determination of whether there is sufficient evidence to submit the issue to the jury is a legal question and not a matter of judicial discretion. *Id.*

"A motorist has a duty to stop, swerve, slacken speed or sound a warning when he or she knows or by the exercise of the highest degree of care could have known that there is a reasonable likelihood of collision in sufficient time to take such preventive measures." *McHaffie v. Bunch*, 891 S.W.2d 822, 828 (Mo.banc 1995). If reasonable people could disagree as to when a driver knew or could have known of a reasonable likelihood of collision, the question of when the duty arises to take evasive action is for the jury. *Id.* There is a duty for a driver to keep a careful lookout for approaching vehicles with sufficient care to appreciate and ap-

prehend the danger of going on without taking precautionary measures. *Id.*

The evidence here, viewed in the light most favorable to the submission of the verdict director, indicates that the instruction was appropriate. The lead escort driver informed Drassen over the radio that a vehicle was coming his direction and did not appear to be slowing down. Drassen testified that he was not yet at the bridge when he saw the Vintila vehicle approaching with its breaks locked, swerving within its own lane. Drassen was aware he was driving an oversized load that would occupy a portion of the other lane on the narrow bridge but continued on his course. According to Hampton, Respondent's expert witness, Drassen had 240 feet in which to stop prior to the collision. Hampton opined that Drassen had sufficient opportunity to stop whether he was traveling at 30 or 40 miles per hour.

This evidence was sufficient to support a submission of negligence based upon whether Drassen knew or could have known there was a reasonable likelihood of collision if he did not take precautionary measures. We find no error in failing to grant Appellants' motions for a directed verdict, judgment notwithstanding the verdict, and for a new trial on this basis. Point V is denied.

In Point VI, Appellants assert the trial court erred in denying their motions for directed verdict, judgment notwithstanding the verdict, and for a new trial because the evidence established that Respondent's injuries were caused by the intervening acts of Theodore Vintila. Appellants argue that Vintila's act of crossing the center line into the westbound lane of traffic was the intervening, superceding cause of the collision and Respondent's subsequent injuries. Again, we review this point to determine if the elements of Respondent's

negligence claim were supported by substantial evidence, viewing the evidence at trial in the light most favorable to the prevailing party. *AgriBank,* 919 S.W.2d at 259.

Appellants correctly note that the mere fact that injury follows negligence does not necessarily create liability and a plaintiff must show the negligence was the proximate cause of the injury. *Robinson,* 24 S.W.3d at 77. "Proximate cause occurs if the cause operates to produce a particular consequence without the intervention of an independent or superceding cause." *Long v. Missouri Delta Med. Ctr.,* 33 S.W.3d 629, 637 (Mo.App. 2000). The defendant's negligence does not need to be the sole cause of the injury, but must be one of the efficient causes thereof without which the injury would not have occurred. *Id.*

" '[S]ome intervening acts are "superceding causes;" that is, because they are independent of the original actor's negligence, they are held to sever the connection between the original actor's conduct and the plaintiff's injury as a matter of law.' " *Esmond v. Bituminous Cas. Corp.,* 23 S.W.3d 748, 753 (Mo.App.2000) (quoting *Tompkins v. Cervantes,* 917 S.W.2d 186, 190–91 (Mo.App.1996)). Conduct which is negligent and " 'sets in motion a series of events leading to an injury can be interrupted by an intervening cause which so interrupts the chain of events as to become the responsible, direct, proximate cause of the injury.' " *Id.* (quoting *Van Vacter v. Hierholzer,* 865 S.W.2d 355, 358 (Mo.App. 1993)). The intervening conduct renders any prior negligence too remote to operate as to the proximate cause. *Id.*

Appellants maintain that Theodore Vintila's act of slamming on the brakes and skidding into the eastbound lane in front of Drassen's oncoming vehicle

was just such an intervening cause. However "[a]n intervening cause will not preclude liability where it 'is itself a foreseeable and natural product of the original negligence.'" *Id.* (quoting *Tompkins,* 917 S.W.2d at 191).

Appellants set the chain of events into motion by moving an overwide across a narrow, two-lane bridge during the prohibited hours, failing to maintain the prescribed distance, and failing to attempt to slow down or stop oncoming traffic. It was both foreseeable and natural that when Vintila was confronted with an oncoming vehicle that protruded into his lane of traffic, he would attempt to avoid a collision by applying his brakes. No one from the convoy attempted to flag him down and warn him about the hazard prior to him seeing it. Because the oversized loads were traveling with only approximately 330 feet between them, it was foreseeable that Vintila would have limited reaction time and might slam on his brakes.

There was sufficient evidence from which to find Appellants' original negligence was not eliminated by Vintila's actions. The trial court did not err in denying Appellants' motions for directed verdict, judgment notwithstanding the verdict, and a new trial. Point VI is denied.

In their seventh point on appeal, Appellants complain that the trial court erred in submitting the language in paragraph Third of Instruction Number 6 requiring the jury to find for Respondent if Appellants' negligence "directly caused or contributed to cause" her injuries.[3] They maintain this language improperly lessened the burden of proof by allowing the jury to hold Appellants wholly liable for Respondent's injuries even if the jurors

found they merely contributed to cause the damage. Appellants further suggest this language was inconsistent with the requirement in Instruction Number 9, the damage instruction, that the jury award Respondent such sum as would compensate her for the damages she sustained "as a direct result of" the collision.

As already noted in this opinion, instructional error only rises to the level of reversible error where there is a showing of prejudice and the merits of the action were affected by the erroneous instruction. *See Rains,* 950 S.W.2d at 588. To make this determination, the reviewing court considers the entire set of instructions as a whole. *Buckallew v. McGoldrick,* 908 S.W.2d 704, 709–10 (Mo.App.1995).

Instruction Number 6 was based upon MAI 17.02, the approved verdict director for the submission of multiple negligent acts. Where a suit involves multiple causes of damage, MAI 17.02 refers the parties and court to MAI 19.01. *See* MAI 17.02 "Committee Comment" (1996 Revision). MAI 19.01 then permits a plaintiff, at his or her option, to substitute the paragraph Third of MAI 17.02 with the following:

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

According to the Notes on Use, "[T]hese modifications may be used whether or not another causing damage is a party." *See* MAI 19.01 "Notes on Use" (1999 Revision).

In the instant case, because Appellants alleged that the accident was caused by Theodore Vintila's negligence, there are allegations of multiple causes of damage and the modified language in MAI 19.01 was applicable. Therefore, according to MAI 19.01, Respondent had the option, as plaintiff, to substitute the approved modifi-

---

**3.** Instruction Number 6 is set forth in its entirety in the discussion under Point I.

cation for paragraph Third and did so. Appellants argue this was improper for a number of reasons.

■ First, Appellants contend the "contributed to cause" language derived from MAI 19.01 improperly favored Respondent by imposing a lesser burden of proof than the "direct result" language of MAI 17.02. Appellants acknowledge that the language in MAI 19.01 has been previously upheld, but "raise this point in the event the Court decides to reevaluate the issue of whether the language of MAI 19.01 improperly lowers the plaintiff's burden of proof." Such challenges have been unsuccessful and we decline to find otherwise in this case. *See, e.g., Menschik v. Mid–America Pipeline Company,* 812 S.W.2d 861, 866 (Mo.App.1991).

■ Next, Appellants charge that the language actually used in Instruction Number 6 did not precisely track the language of MAI 19.01 because it stated "directly caused or contributed to cause" instead of "directly caused or directly contributed to cause." Appellants argue the omission of the second "directly" improperly lowered "the burden of proof even further, so that the jury could find for [Respondent] if [Appellant's] negligence contributed to [Respondent's] injuries in any was whatsoever."

Appellants made a general objection at trial to Instruction Number 6 based upon the argument addressed above that MAI 19.01 improperly lowers a plaintiff's burden of proof. Appellants did not, however, object to Instruction Number 6 on the grounds that it failed to precisely track the language of MAI 19.01. Furthermore, Appellants made no mention of the omission to the trial court, nor did they offer modified instructions "correcting" the alleged ambiguity.

According to Rule 70.03, counsel must make specific objections to instructions considered erroneous, distinctly stating the matter objected to and the grounds of objection, before the jury retires to give its verdict. Failure to make such an objection to the trial court does not preserve a claim of error for appellate purposes. *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 445 (Mo.banc 1998). Appellants waived this issue by failing to make a specific objection at trial.

Finally, Appellants claim the trial court erred in submitting Instruction Number 6 because it was inconsistent with the damage instruction, Instruction Number 9. Instruction Number 9 provides:

If you find in favor of [Respondent], then you must award [Respondent] such sum as you believe will fairly and justly compensate [Respondent] or any damages you believe she sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence.

Appellants maintain the "contributed to cause" language of Instruction Number 6 is inconsistent with the "direct result" wording of Instruction Number 9 and mandates reversal.

Again, at trial Appellants made no objection to either instruction on this basis. Their failure to make a specific objection preserved nothing for review. *See Emery,* 976 S.W.2d at 445. Point VII is denied.

■ In their final point on appeal, Appellants allege the trial court erred in failing to grant their motion to amend that portion of the judgment awarding damages. Appellants claim that pursuant to § 537.060,[4] they are entitled to a $25,000 setoff due to Respondent's settlement with the estate of Theodore Vintila. They also

4. Section 537.060 provides that an agreement by release is given to one of two or more persons liable in tort for the same injury, such agreement shall reduce the claim against the

maintain that pursuant to § 307.178.4(2),[5] they are entitled to a one per cent reduction in damages based upon the jury's allocation of fault to Respondent for failing to wear her seatbelt.

Respondent concedes that Appellants' claims under Point VIII have merit, and the judgment should be reduced to $1,460,250. Point VIII is granted.

This cause is remanded, and the trial court is directed to amend the award of damages to $1,460,250. All other portions of the judgment are affirmed.

PARRISH, P.J., and SHRUM, J.

remaining tortfeasor by the stipulated amount of the agreement.

5. Section 307.178.2 requires front seat passengers of passenger cars manufactured after January 1, 1968 to wear a safety belt. Section 307.178.4(2) allows a trier of fact to reduce the amount of a plaintiff's recovery by an amount not to exceed 1% of the damages if the plaintiff's failure to wear a safety belt contributed to the plaintiff's claimed injuries.